[No. 9246. Department One. April 10, 1911.]

F. E. ROSENBURG et al., Appellants, v. FREMONT UNDERTAKING COMPANY, Respondent.[1]

TRADE-MARKS AND TRADE-NAMES—INFRINGEMENT. The prior use of the trade-name "Fremont Undertaker," at Fremont, precludes the adoption by another firm at the same place of the name "Fremont Undertaking Company," where confusion results therefrom.

SAME—RIGHTS OF ASSIGNEE—CHANGE OF NAME. Successors in interest acquire the right to change the trade-name "Fremont Undertaker" to "Fremont Undertaking Company," as against parties adopting a similar name.

SAME—ABANDONMENT. The right to the use of a trade-name employed by a firm is abandoned and lost, where, upon dissolution of the copartnership, the member succeeding to the business agreed to, and for a time did, discontinue its use.

Appeal from a judgment of the superior court for King county, Frater, J., entered June 29, 1910, upon findings in favor of the defendant, after a trial on the merits before the court without a jury, in an action to enjoin the use of a trade-name. Reversed.

*Carkeek & McDonald*, for appellants.
*Morris, Southard & Shipley*, for respondent.

FULLERTON, J.—This action was brought by the appellants against the respondent to enjoin the use of a trade-name. From the record it appears that in 1903 one M. O. Carton opened an undertaking establishment in the northern

[1]Reported in 114 Pac. 886.

part of the city of Seattle known as Fremont.   In advertising his business he early began to use the words "Fremont Undertaker" sometimes placing the words immediately following his name, as "M. O. Carton, Fremont Undertaker," and sometimes using them as his business name, as "Fremont Undertaker; M. O. Carton, proprietor"; the latter form being the one principally adopted during the later years he continued in business.   During this time, also, patrons would address mail matter pertaining to his business to him under the name of "Fremont Undertaking Company," and "Fremont Undertaking Co."

In 1905, some two years after Carton had established his business, one J. J. Bleitz opened an undertaking establishment in the northern part of Seattle, locating at Green Lake. In January, 1906, he formed a partnership with one Butterworth and removed the establishment to Fremont, a few blocks distant from Carton's business house, where they did business for some eight months under some three different names; namely, "Bleitz & Butterworth," "Fremont Undertaking Company," and "Fremont Undertaking Company; Bleitz & Butterworth," using the latter form more frequently, perhaps, than either of the others.   After the opening of the second establishment, the parties immediately became business rivals, and owing to the similarity of the names used by them, much confusion resulted.   Mail intended for the one would be delivered to the other, and sometimes persons desiring the services of the one concern would by mistake call on the other.   Carton, during this time, remonstrated orally with Bleitz & Butterworth against the use of the name "Fremont Undertaking Company" in any form, and in the late summer of 1906, wrote them a letter threatening them with an action if they did not cease to use it.

On September 14, 1906, Bleitz & Butterworth dissolved their partnership, Butterworth selling his interests to Bleitz. In the articles of dissolution it was provided that "Bleitz agrees to discontinue the name of 'Fremont Undertaking Com-

pany; Bleitz & Butterworth,' heretofore used by said partnership, and to remove same from all signs, stationery and advertising as soon as possible." Bleitz, in compliance with this part of the agreement, commenced doing business under the name of "Bleitz Undertaking Company," changing all his signs and advertising matter to read in that way. Matters ran on in this way until August, 1908, Carton in the meantime continuing to use the name "Fremont Undertaker." On August 26, 1908, Carton sold his business to the plaintiffs in this action, appellants in this court. They immediately adopted the name of "The Fremont Undertaking Co.," and filed with the county clerk of King county a certificate setting forth such name as the firm name under which they proposed to conduct their business, as required by the statute of 1907, and from thence on used the name as their trade-name, and extensively advertised their business thereunder. On November 10, 1908, Bleitz, with certain associates, formed a corporation under the name "The Fremont Undertaking Company, Inc.," and the corporation thereafter took over the business theretofore conducted by Bleitz, and began doing business under the corporate name. Thereupon the appellants notified the corporation to discontinue using the name "The Fremont Undertaking Company, Inc.," or any similar name, and on its refusal so to do, began the present action to enjoin its use. The respondent, in its answer, claimed the better right to the use of the name, and on the trial the court held with it, enjoining the appellants from further using the name "Fremont Undertaking Company," or any similar name, in the conduct of their business. This appeal followed.

The right to use a particular name as a trade-name belongs to the one who is first to appropriate it and use it in connection with a particular business. To acquire the right to use a particular name it is not necessary that the name be used for any considerable length of time. In a contest between two individuals over such right, therefore, it is enough to show that the one was in the actual use of it before it was begun

to be used by the other. 28 Am. & Eng. Ency. Law (2d ed.), 395. It is a recognized principle, also, that a trade-name can be abandoned or given up by the original appropriator, and that when it is so abandoned or given up, any other person has the right to immediately seize upon it and make use of it, and thus acquire a right to it superior, not only to the right of the original user, but to all the world. *Gaines & Co. v. Whyte Grocery Fruit & Wine Co.*, 107 Mo. App. 507, 81 S. W. 648. Nor need one trade-name, in order to be an infringement upon another, be exactly like it in form and sound. It is enough if the one so far resembles the other as to deceive persons of ordinary caution into the belief that they are dealing with the one concern when they use the name of the other. For example, it was held in *Proctor & Gamble Co. v. Globe Refining Co.*, 92 Fed. 357, that it was an infringement upon the trade-mark "Every Day Soap" to use as a trade-mark "Everybody's Soap"; in *International Society v. International Society*, 59 N. Y. Supp. 785, it was held an infringement on the name "International Society" to use the name "International Society of Literature and Bookbinders' League"; in *Mossler v. Jacobs*, 66 Ill. App. 571, it was held an infringement upon the name "Six Little Tailors" to use the name "Six Big Tailors"; and in *Myers v. Kalamazoo Buggy Co.*, 54 Mich. 215, 19 N. W. 961, 20 N. W. 545, 52 Am. Rep. 811, it was held an infringement upon the trade-name "Kalamazoo Wagon Company" to use the name "Kalamazoo Buggy Company." To the same effect are the following cases: *Fuller v. Huff*, 104 Fed. 141; *Hansen v. Siegel-Cooper Co.*, 106 Fed. 691; *Nokes v. Mueller*, 72 Ill. App. 431; *Volger v. Force*, 63 App. Div. 122, 71 N. Y. Supp. 209; *Morgan Envelope Co. v. Walton*, 82 Fed. 469.

Nor is the rule different because the name or some part of it may be a geographical name. The rule is not rested on the principle that the user has a property in a name, but on the principle that it is a fraud on both the person who has established a trade which he carries on under a given name,

and the public who trade with the person on the faith of the name, to allow another to assume the same or a similar name for the purpose of selling his own goods or inducing people to trade with him under the belief that they are purchasing the goods of, or trading with, the person who established the name. *Eastern Outfitting Co. v. Manheim*, 59 Wash. 428, 110 Pac. 23.

"A corporation may be enjoined from using a name or conducting a business under a name so similar to the name of a previously established corporation, association, partnership, or individual, engaged in the same line of business, that confusion or injury results therefrom." *Martell v. St. Francis Hotel Co.*, 51 Wash. 375, 98 Pac. 1116.

Applying these principles to the case in hand, it would seem that the judgment of the trial court was erroneous. In the first place we think there was an infringement upon the trade-name "Fremont Undertaker," adopted by Carton, by the use of the name "Fremont Undertaking Company," adopted by Bleitz & Butterworth. There can be no question that Carton was the first to use the name "Fremont Undertaker," and that he was using it at the time Bleitz & Butterworth commenced business as partners. It would seem to be free from question also that the name adopted by the latter was sufficiently identical with the name adopted by Carton as to mislead persons of ordinary caution. And that persons were actually misled by the similarity of the names into trading with Bleitz & Butterworth when in fact they intended to trade with Carton, the record abundantly shows. It being, therefore, unfair competition for the firm of Bleitz & Butterworth to adopt the name of "Fremont Undertaking Company," they acquired no right therein by its adoption, and the successors in interest of Carton were free to change the form of the name adopted by Carton to that form when they succeeded to Carton's interests.

In the second place, the right to use the name of Fremont Undertaking Company by Bleitz & Butterworth, even con-

ceding that they acquired the right, was abandoned by Bleitz after he succeeded to the interests of Bleitz & Butterworth, and taken up by the appellant before the respondent sought to resume its use.  It is true that Bleitz testified there was no intention on his part to abandon the use of the name entirely, but we think the fact can be better ascertained by his acts at the time than by his present statements.  He agreed in writing with his former partner to abandon its use, and did in fact quit its use until after it was taken up by the appellants.  While we think a secret intent on his part to again resume the name would not be sufficient against one who actually took up its use, there is here evidence of intent to abandon, as well as actual abandonment.

The judgment appealed from is reversed, and the cause remanded with instructions to enter a decree in favor of the appellants enjoining the respondent from further using in connection with its business the name "Fremont Undertaking Company, Inc." or any similar name.

DUNBAR, C. J., GOSE, MOUNT, and PARKER, JJ., concur.