[No. 9609. Department Two. March 28, 1912.]

WRIGHT RESTAURANT COMPANY *et al.*, *Appellants*, v.

SEATTLE RESTAURANT COMPANY *et· al.*,

*Respondents.*[1]

TRADE-MARKS AND TRADE-NAMES—UNFAIR COMPETITION — INJUNC-TION—COMPLAINT—SUFFICIENCY. Although there may be no exclusive right to use a proprietary trade-mark, nor any breach of contract as to good will, yet an injunction will be granted to restrain unfair competition by the fraudulent use of a trade-name, and the complaint states a cause of action, where it appears that a corporation had acquired from a partnership in the restaurant business the right to use the individual name of one of the partners, who had previously built up an enviable reputation and trade at a certain location in the city of S., with the right to conduct the business under such individual name, that such partner afterwards sold out his stock to his former partner, and soon after organized a new corporation and opened up and began conducting another restaurant and cafe in the same city within a block of the old location, with the same individual name printed in large letters on the front door in such a manner as to make the public believe that the old restaurant had moved to the new location, advertising the same in the daily papers and moving picture shows in the same misleading manner, to the plaintiff's damage.

Appeal from a judgment of the superior court for King county, Tallman, J., entered March 24, 1911, upon sustaining a demurrer to the complaint, dismissing an action for an injunction. Reversed.

*Herbert E. Snook*, for appellants.

*Leopold M. Stern*, for respondents.

[1]Reported in 122 Pac. 348.

ELLIS, J.—Action to enjoin the use of a trade-name in unfair competition. A general demurrer to the complaint was sustained. The action was dismissed. The plaintiffs have appealed.

The complaint in substance states that, for a long time prior to the incorporation of the plaintiff, Wright Restaurant Company, a corporation, the defendant, Chauncey Wright, was the sole owner of a restaurant, which he conducted at No. 164, Washington street, in the city of Seattle, under the name "Chauncey Wright's Cafe," which was painted in large letters upon the front window of the place of business; that he had built up a large and profitable trade; that he offered to sell to the plaintiff Charles Gearheart, for $4,500, a one-half interest in the business, representing that under his name he had built up a business amounting to more than $800 per month, net profit, and that if continued under the name of Chauncey Wright, the business would continue to be no less profitable; that, having investigated the business and found these representations true, the plaintiff Charles Gearheart, on October 6, 1909, purchased a half interest in the business, paying Wright therefor $4,500 in cash; that before and at the time of the purchase, Wright emphasized the fact that his name at the head of the business and good will would insure a prosperous and lucrative business; that, after the purchase, and under the partnership name "Chauncey Wright's Cafe," Wright and Gearheart and the corporation afterwards organized did a prosperous business, of which the profits were in about the sum of $800 per month up to October 6, 1910; that sometime prior to February 24, 1910, Wright and Gearheart concluded to incorporate, and it was agreed between them that the corporate name should be "Wright Restaurant Company," and that the name "Chauncey Wright's Cafe" should remain upon the front window of the restaurant, for the reason that Chauncey Wright was well known in that business and in that locality, and that his name was so identified with the business that it

would prosper under the incorporation as it had under the co-partnership; and that thereupon the parties did incorporate under the corporate name "Wright Restaurant Company," with a capital stock of 10,000 shares, of a par value of one dollar each, divided equally between Wright and Gearheart; that about October 6, 1910, Wright proposed to sell his 5,000 shares of stock to Gearheart for the sum of $4,000 which proposal was acceded to by Gearheart, who received a transfer of the 5,000 shares from Wright, paying him therefor $4,000; that the sale was made without reservation of any kind, and that Gearheart became the owner of the interests of Wright in the cafe, with the exclusive right to use the corporate name and the trade-name "Chauncey Wright's Cafe;" that soon after the sale of his stock in the Wright Restaurant Company, Chauncey Wright organized a corporation, the defendant Seattle Restaurant Company, of which he became president, and opened and began conducting, through that corporation, another restaurant and cafe at No. 110, Occidental avenue, in the city of Seattle, within the same block in which the plaintiff's restaurant is located, and caused his name "Chauncey Wright," in large letters, to be printed upon the front window thereof, followed in very much smaller letters by the words, "President, Seattle Restaurant Company;" that Chauncey Wright and the Seattle Restaurant Company so conduct and operate the restaurant under that name, for the purpose and with the intent to deceive the public and to make the public believe that the restaurant on Washington street has moved to Occidental avenue, and under the same auspices as Chauncey Wright's Cafe on Washington street, and that the public has received that impression and belief; that the defendants at once began and continue to advertise the new restaurant under the name "Chauncey Wright," as president of Seattle Restaurant Company, by means of moving picture shows and in the daily newspapers, in the same lettering as that upon the window, for the purpose and with the result of

causing the general public to believe that Chauncey Wright
had discontinued his restaurant on Washington street, and
moved to and become reestablished at 110 Occidental ave-
nue; that, since the name of Chauncey Wright has been
advertised and exploited by the defendants in connection
with the new restaurant, the business of the plaintiffs on
Washington street has become impaired, and will be ir-
reparably impaired if the defendants continue to use and
exploit the name Chauncey Wright as they are now doing;
that, prior to the commencement of this action, the plaintiffs
notified the defendants not to open any restaurant on Occi-
dental avenue, and not to use the name Chauncey Wright in
connection therewith; that, by reason of the premises, the
plaintiffs have already been damaged in the sum of $2,000,
and will be damaged in the further sum of $10,000 if the use
of the name by the defendants be continued, and that the
plaintiffs will be deprived of a large percentage of their
patronage unless the defendants be enjoined.    The com-
plaint then prays for an injunction restraining the defend-
ants from using the name, or advertising their business on
Occidental avenue under the name of Chauncey Wright, and
for damages in the sum of $12,000, and for general relief.

The demurrer, of course, admits as true every allegation
of fact in the complaint.    Do these facts constitute a cause
of action?    To answer this question intelligently we must
not lose sight of the nature of the action.    It was not an
action to restrain the use of a proprietary trade-mark, nor
to protect the sale of a good will.    The first of these rests
in the infringement of an exclusive proprietary right; the
second, in breach of contract.    The complaint here cannot
be sustained upon either of these grounds.    This action, if
it can be maintained at all, must rest upon unfair competi-
tion by the fraudulent use of a trade-name.    In such a case,
no exclusive right in the plaintiffs to the use of the name
need be shown.    "In fact, the distinguishing feature of cases
of unfair competition is the protection of one who has no

technical trade-mark and hence no exclusive property right."
Paul on Trade-Marks, § 211. But the plaintiff in such a
case must have the right to use the name, and he or his pred-
ecessor in interest must have actually enjoyed the prior use.
When these things are shown, his use of the name will be
protected by injunction against others using it unfairly to
his injury. This court has so held:

"The rule seems to be well established, that 'a corporation
may be enjoined from using a name or conducting its busi-
ness under a name so similar to the name of a previously es-
tablished corporation, association, partnership, or individual,
engaged in the same line of business, that confusion or in-
jury results therefrom.'" *Martell v. St. Francis Hotel Co.*,
51 Wash. 375, 98 Pac. 1116.

See, also, *Rosenburg v. Fremont Undertaking Co.*, 63 Wash.
52, 114 Pac. 886.

According to the allegations of the complaint, when the
plaintiff Gearheart entered into partnership with the de-
fendant, it was mutually agreed that the trade-name "Chaun-
cey Wright's Cafe" should be used by the partnership. The
right to use it thereby became a partnership asset. On the
formation of the corporation "Wright Restaurant Com-
pany," it was also agreed that the name "Chauncey Wright's
Cafe" should remain upon the window, and that the business
of the corporation should be conducted in that name. Un-
questionably the right to use the name as a trade-name
passed to the corporation by the consent of all parties con-
cerned. *Allegretti v. Allegretti Chocolate Cream Co.*, 177
Ill. 129, 52 N. E. 487; *Bissell Chilled Plow Works v. Bissell
Plow Co.*, 121 Fed. 357.

"Sale of Business Site; effect of, on names.—This question
is complicated often, because the name which is transferred
is attached more or less definitely to some locality, building,
or address, which has become really a part of the name and
reputation of the business. This is true frequently of ho-
tels, breweries, natural springs, newspapers, and the like.
In such cases he who buys the buildings, or acquires the right
to occupy them, will have the right to use the name attach-

ing thereto, in the absence of very explicit contractual arrangement." Nims, Unfair Business Competition, § 54.

That right, being thus vested in the corporation, was a right which remained with it so long as it saw fit to use the name, regardless of the ownership of its stock. The sale of his stock by the respondent Wright in no manner affected this right. Nor was this right affected by the further circumstance that the distinctive feature of the trade-name was the name of the respondent Chauncey Wright.

"Thus, the outgoing stockholders of a corporation, the most distinguishing part of whose names the corporation bears, have no right to compete in business under a corporate name so nearly like the first as to mislead customers." Paul, Trade-Marks, § 216.

See, also, *Van Auken Co. v. Van Auken Steam Specialty Co.*, 57 Ill. App. 240; *Holmes, Booth & Haydens v. Holmes, Booth & Atwood Mfg. Co.*, 37 Conn. 278, 9 Am. Rep. 324; *Penberthy Injector Co. v. Lee*, 120 Mich. 174, 78 N. W. 1074. While these authorities deal with the *corporate* name as a trade-name or trade-mark, they are not based upon the fact that the name was acquired as a part of the corporate franchise, but upon the fact that the name was a *trade-name*, and so used by the corporation. *Hazelton Boiler Co. v. Hazelton Tripod Boiler Co.*, 137 Ill. 231, 28 N. E. 248.

The rule is, therefore, equally applicable, whether the name used as a trade-name be that of a corporation or another name legally acquired and used by the corporation as a trade-name. In the foregoing cases and in cases where the parties have the same name or names *idem sonans*, the injunctive relief was granted, not because of any corporate franchise, but upon the broader principle that a man may not so use any name, not even his own name, as unfairly to compete with another person or corporation by confusing in the public mind his business with that of the competitor first using a trade-name of which the name in question was

the distinctive feature. *International Silver Co. v. Rogers Corp.*, 66 N. J. Eq. 119, 57 Atl. 1031, 2 Am. & Eng. Ann. Cases, 407; *Valentine Meat Juice Co. v. Valentine Extract Co.*, 83 Law Times, 259; *Royal Baking Powder Co. v. Royal*, 122 Fed. 337; *International Silver Co. v. Rogers Co.*, 110 Fed. 955; *Stuart v. Stewart Co.*, 91 Fed. 243; *Walter Baker & Co. v. Baker*, 87 Fed. 209; *Walter Baker & Co. v. Sanders*, 80 Fed. 889. Many other decisions of like import might be cited, but these will be sufficient to exemplify the rule.

A majority of the adjudicated cases involved the use of trade-names or trade-marks as applied to some specific article or class of manufacture or merchandise; but the rule is applied, and it seems to us with equal reason, to a trade-name when used in connection with a business of any kind so as to become affixed to the establishment. *Booth v. Jarrett & Palmer*, 52 How. Pr. 169. Such is the established rule as applied to names other than personal proper names, even though not names which might be exclusively appropriated as technical trade-marks. *Weinstock, Lubin & Co. v. Marks*, 109 Cal. 529, 42 Pac. 142, 50 Am. St. 57, 30 L. R. A. 182; *Martell v. St. Francis Hotel Co.*, supra; *Rosenburg v. Fremont Undertaking Co.*, supra.

Conceded, as it must be, that the right to use the personal name of another may be acquired, then the same rule of protection applies. The protection must be commensurate with the right. While every person has the undoubted right to use his own name in his own business, he cannot so use it as to unfairly compete with another with whose business that name has become identified and rightfully used as a trade-name. Such is the decided trend of the more modern authority. 28 Am. & Eng. Ency. Law (2d ed.), p. 426.

"Where a personal name has become identified with particular goods or a particular business so as to denote, in a secondary sense, such goods or business, a person of the same or a similar name subsequently engaging in the same

business or dealing in the same goods must adopt affirmative precautions to prevent unnecessary confusion. Under such circumstances, the use of such a name by another person of the same name, unaccompanied by any precaution or indication of difference in itself amounts to a deceptive artifice or misrepresentation, and constitutes unfair competition." 28 Am. & Eng. Ency. Law (2d ed.), p. 428.

See, also, *Lever Bros. Ltd. Boston Works v. Smith*, 112 Fed. 998.

Applying the principles which we conceive to be established by the foregoing authorities to the complaint here, we are constrained to hold that it states a cause of action. In view of the near location of the respondents' place of business to that of the old concern, we cannot say that their use of the name "Chauncey Wright" as the distinguishing feature of their sign on the window, and in advertisements, both in the newspapers and by means of moving picture shows, was not reasonably calculated to divert patronage from the old concern, under a belief that the new had succeeded to the business of the old or was being conducted under the same auspices. That such was the design, seems plain. The unusual arrangement with the name "Chauncey Wright" placed first in conspicuously large letters, followed by the words "President Seattle Restaurant Company," in very much smaller lettering, could hardly have been adopted for any other purpose. In any event, the purpose is not important if the means employed were reasonably calculated to, and actually did, attract patronage under the mistaken belief. Whether they actually had that effect or not must be determined by evidence. We merely hold that it cannot be said, as a matter of law, that the means used were not such as might reasonably be expected to create confusion and unfairly divert patronage to the injury of the appellants.

Cases are not wanting in which courts have enjoined the use of signs and advertisements when so similar in their dominant features to those in use by another as to lead to such confusion, especially where the places of business are in

close proximity to each other. *Weinstock, Lubin & Co. v. Marks, supra; American Brewing Co. v. St. Louis Brewing Co.*, 47 Mo. App. 14; *Johnson v. Hitchcock*, 3 N. Y. Supp. 680; *Cady v. Schultz*, 19 R. I. 193, 32 Atl. 915, 61 Am. St. 763, 29 L. R. A. 524.

The respondent Wright undoubtedly had the privilege of entering the restaurant business when and where he would, and to use his own name in connection therewith. It was, however, his duty to adopt such affirmative precautions in the use of his name as to prevent unnecessary confusion of his with the appellants' business.

The judgment is reversed, and the cause remanded with directions to overrule the demurrer and determine the issues upon evidence.

DUNBAR, C. J., CROW, CHADWICK, and MORRIS, JJ., concur.