[No. 11160. Department One. September 6, 1913.]

SAN FRANCISCO OYSTER HOUSE, *Appellant*, v. J. MIHICH et al., *Respondents*.[1]

TRADE-MARKS AND TRADE-NAMES—RIGHT TO TRADE-NAME—NECESSITY OF FILING CERTIFICATE—CORPORATIONS. Under Rem. & Bal. Code, § 8369, providing that no person shall transact business under an assumed name unless he shall file a certificate thereof in the county clerk's office, a partnership cannot acquire the legal right to an assumed name until the certificate is filed; hence, where a corporation had filed its articles adopting the name before the filing of the partnership name, the partnership is not entitled to the name by reason of being the first to commence business; the one first legally acquiring the name being entitled to hold it, in the absence of fraud.

SAME—RELIEF—INJUNCTION—CORPORATIONS—NAMES. An injunction lies to prevent the use of a business name so similar to the name legally adopted by a corporation that the mail of the two concerns became mingled, patrons of one mistakenly patronized the other, and the confusion resulted in damage which would be incapable of proof in a court of law.

[1]Reported in 134 Pac. 921.

Appeal from a judgment of the superior court for King county, Dykeman, J., entered December 6, 1912, dismissing an action for an injunction, after a trial on the merits to the court. Reversed.

*Roger Marchetti* (*Edward Judd* and *Tucker & Hyland*, of counsel), for appellant.

*Tom Alderson*, for respondents.

Mount, J.—This action was brought by the plaintiff to restrain the defendants from using the name of "San Francisco Oyster & Chop House," as the name of a restaurant business. The defendants answered the complaint, claiming that they had the first right to the use of the name and praying that the plaintiff be restrained from using the name of "San Francisco Oyster House." The cause came on for trial before the lower court without a jury, upon stipulated facts and evidence as to the time when the defendants' name signs were placed in front of their place of business. After hearing this evidence and the stipulations of the parties, the trial court dismissed the action without granting any affirmative relief to either party. The plaintiff has appealed.

The facts in the case are substantially as follows: In December, 1911, the parties to this action, without notice of what the other intended to do or was doing, each being about to enter into the restaurant business, sought names for their respective business. The promoters of the appellant caused an examination to be made of the records of the auditor's office of King county to ascertain if there was any corporation whose name would forbid the use of the words, "San Francisco Oyster House," as the name of the appellant's restaurant. No name was found conflicting therewith. Afterwards, on December 15th, the promoters of the appellant were informed by the secretary of state that such name might be used; that there was no other corporate name conflicting therewith in the files of his office. On December 20, 1911, articles of incorporation of the appellant were ex-

ecuted, assuming the corporate name of "San Francisco Oyster House." On December 22d, these articles of incorporation were filed with the county auditor of King county, and on the next day they were filed with the secretary of state and the annual license fee paid. On February 27, 1912, the appellant opened its restaurant to the public at No. 216, James street, in the city of Seattle, being in the middle of the block between Second and Third avenues, and thereafter proceeded to conduct its business at that place under the name of "San Francisco Oyster House."

At about the time the appellant was examining the records of the county auditor's office in order to determine that the name "San Francisco Oyster House" would not conflict with any other name, the respondents were examining the records of the county clerk's office of King county to determine if any person was using an assumed name which would conflict with the name "San Francisco Oyster & Chop House." No conflicting name was found in the records of the county clerk's office. On December 16, 1911, the respondents negotiated a lease of the premises at No. 216, Cherry street, in the city of Seattle, which street is the next street north of and parallel to James street. The place of business of the respondents is located in the middle of the block between Second and Third avenues. On December 19, 1911, the respondents ordered a cloth sign painted announcing that their place of business would be open on December 28th. On December 20th, this cloth sign was put up in front of their place of business. On December 28th, the respondents opened their restaurant for business; and on February 5th and 12th, 1912, they put up permanent signs upon which was the name "San Francisco Oyster & Chop House." On March 21, 1912, they filed in the office of the county clerk of King county their certificate of assumed name.

It was stipulated that, owing to the similar location of these two restaurants and the similarity of the names, being on neighboring streets between the same thoroughfares, it

continually happens that guests desiring to patronize one of the establishments by mistake patronize the other; that people generally in the community are confused by the similarity of these two names; that the bills of both restaurants for goods purchased upon the market, and their mail, have become badly mixed, to the great damage of the parties, and in such a manner that most of the damage would be incapable of proof in a court of law. It is stipulated that the parties to the suit have not attempted to perpetrate a fraud upon each other, but that the use of these names is injurious to the business and property rights of both parties, and that this injury will continue as long as the names are so used in the locations where they are now situated.

Under the stipulated facts in the case, it is plain that the appellant is a corporation regularly organized under the laws of this state, and is entitled to such name as a corporation, and is doing business in its own name; and that the respondents are a copartnership using an assumed name. The statutes of this state (Rem. & Bal. Code, § 8369; P. C. 377 § 21) provide:

"No person or persons shall hereafter carry on, conduct or transact business in this state under any assumed name or under any designation, name or style, corporate or otherwise, other than the true and real name or names of the person or persons conducting such business or having an interest therein, unless such person, or all of such persons, conducting said business, or having an interest therein, shall file a certificate in the office of the county clerk of the county or counties in which said business is to be conducted, which certificate shall set forth the designation, name or style under which said business is to be conducted, and the true and real name or names of the party or parties conducting, or intending to conduct, the same, or having an interest therein, together with the postoffice address or addresses of said person or persons."

It is conceded that the respondents did not file their certificate of assumed name in the office of the county clerk until March 21, 1912. It is true that, on December 16, 1911, the

respondents negotiated a lease of the premises which they were to occupy, and on December 19th they had painted a cloth sign announcing that their place of business would be open on December 28th; and on December 20th this cloth sign was put up in front of the place where, upon December 28th they began business; and that on February 5th and 12th, 1912, they put up permanent signs upon which was the name which they had assumed. While this court has held in *Sutton & Co. v. Coast Trading Co.*, 49 Wash. 694, 96 Pac. 428, that contracts of a partnership under an assumed name were not invalidated by reason of its failure to file with the county clerk a certificate showing the names of the parties, yet it is plain, we think, that while the respondents assumed the name of "San Francisco Oyster & Chop House," yet they were not legally entitled thereto until they had complied with the statute and filed in the office of the county clerk of King county the certificate of assumed name as required by the statute. This was not done until March 21, 1912. The appellant, on the other hand, had filed its articles of incorporation on December 23, 1911. It thereby legally acquired the right to the use of its name prior to the time that the respondents legally acquired the right to assume the name that they had selected. In *Martell v. St. Francis Hotel Co.*, 51 Wash. 375, 98 Pac. 1116, in considering the right of parties to trade-names, we said:

"The rule seems to be well established, that 'a corporation may be enjoined from using a name or conducting its business under a name so similar to the name of a previously established corporation, association, partnership, or individual, engaged in the same line of business, that confusion or injury results therefrom.'"

This rule is not disputed by either party to this action. But it is claimed by the respondents that, because they sought to do business and did business by negotiating a lease and opening their restaurant for business prior to the time that the appellant commenced business, they were entitled to the

use of the name they had assumed prior to the time of their filing the certificate.   We are satisfied, however, that since neither party knew that the other was assuming the same or a similar name, and that there was no actual or intended fraud by either upon the other, that the one who in good faith first legally acquired the name selected, is entitled to hold it. We think there can be no doubt that the appellant, by reason of its articles of incorporation, first acquired the legal right to the use of its name; and under the stipulated facts, that the appellant was and is entitled to a restraining order, under the rule announced in *Rosenburg v. Fremont Undertaking Co.*, 63 Wash. 52, 114 Pac. 886.   In that case we said:

"Nor need one trade-name, in order to be an infringement upon another, be exactly like it in form and sound.   It is enough if the one so far resembles the other as to deceive persons of ordinary caution into the belief that they are dealing with the one concern when they use the name of the other."

In this case, as we have seen, it was stipulated that the bills of both restaurants for goods purchased in the market were mailed to and received by the other; that their mail became mingled; and the patrons of the one had mistakenly patronized the other; that this confusion resulted in damage which would be incapable of proof in a court of law.   We think, under these admitted facts, that it was the duty of the trial court to have granted the injunction as prayed for in the complaint of the appellant.

The judgment of dismissal is therefore reversed, and the cause remanded with instructions to enter a judgment in favor of the appellant as prayed for in its complaint.

CROW, C. J., PARKER, GOSE, and CHADWICK, JJ., concur.