[No. 19641.  Department Two.  April 19, 1926.]

ELECTRIC SUPPLY COMPANY, *Appellant,* v. A. W. HESS *et al., Respondents.*[1]

[1] TRADEMARKS (2)—NAMES SUBJECT OF OWNERSHIP—PRIORITY OF USE. The use of the name "Electric Service Company" will be enjoined as infringent on the prior right of a mercantile corporation in the same town, using the name "Electric Supply Company"; where such words had, in that locality, acquired a secondary meaning as referring to the business done by the corporation; and where the subsequent use of the similar name resulted in much confusion and trouble, in the matter of mail and express and freight shipments, and actual losses therefrom.

Appeal from a judgment of the superior court for Chelan county, Parr, J., entered June 1, 1925, upon findings in favor of the defendants, in an action to enjoin the use of a trade-name, after a trial to the court. Reversed.

[1]Reported in 245 Pac. 27.

*Sumner & Adams,* for appellants.
*Corbin & Easton,* for respondents.

MITCHELL, J.—This action was brought by the "Electric Supply Company," a corporation, of Wenatchee, Washington, against A. W. Hess and wife to restrain them from using the name "Electric Service Company" in the business conducted by Mr. Hess in the same city. On the trial, relief was denied the plaintiff. It has appealed.

. Both concerns were engaged in essentially the same kind of business, that is, electrical wiring, the sale of electrical supplies and merchandise and electrical fixtures, apparatus and appliances. Their places of business are in the same city block but face on different streets, although at former times they have occupied other locations in the same general business district of the city.

F. E. Smallidge, the president of the appellant corporation, and another person, as partners, commenced business in Wenatchee in July, 1916, under the trade name of Electric Supply Company. Smallidge bought his partner's interest in the business in March, 1917, and continued the business in the same name. About September, 1918, he and others organized the plaintiff corporation to conduct the business, taking over the good will and name of the former partnership and have at all times since conducted it in that name.

Mr. Hess went to Wenatchee in 1920. It appears that, about January, 1924, he formed a partnership with one Jensen and commenced business in the name of Wenatchee Plumbing & Electric Company. He bought out his partner's interest in October, 1924, at which time he adopted the business name of Electric Service Company and continued to do business under that name. Upon learning that the respondent intended to use such

name, the appellant's president interviewed Mr. Hess, suggested the necessary confusion and trouble the similarity of the business names would cause, and requested that respondent use some other business name. Respondent said he would consider the matter. Later on he declared he would not change the name, and this suit was brought a few months thereafter.

Each of the parties, in its own business name, uses the usual printed stationery and business signs, newspaper advertising, and has its name alphabetically arranged in the telephone directory. In the limited time prior to the commencement of the suit and, indeed, down to the date of the trial, May 4, 1925, there was a large number of instances causing confusion, time and trouble, many of them of a rather substantial sort. A number of witnesses on behalf of the appellant, testifying that they could not remember all of such things, gave in detail many of them. Some of them may be more particularly referred to herein. A great many times, mail addressed to the respondent was delivered to the appellant, not a very important thing in considering the rights of the appellant; a great many telephone calls, long distance and local, properly placed by the telephone company, were received by each and all of the employees of appellant, when they were intended for the respondent, concerning business matters. As one witness said, "We have been bawled out several times for things which were not our mistakes by our competitor's customers;" might have three such telephone calls in a day and might not have one for a week or ten days; a great many people called in appellant's store asking for members of the organization of the respondent; a remittance was sent to the appellant by a resident customer in settlement of a statement of account accompanying a statement made out by and for

goods that had been sold by the respondent; in a trouble job, a customer of appellant in using the telephone directory had mistakenly called and procured the services of respondent; a steady customer had a contract with appellant to install water heaters in a building, but by consent the work was suspended before completion, and later the customer, meaning to call the appellant, got the respondent by telephone and his workmen completed the job, the customer thinking it was being done by the employees of the appellant; and creditors, by letter and in person, sought to collect from appellant accounts against the respondent.

Trouble arose over goods shipped in by express on account of wrong deliveries, on account of which complaints were made by the appellant. One shipment intended for the appellant was marked to the respondent. The express agent testified it had to be held in his office some time, to straighten the matter out. He further testified that, on several occasions, he had been called to the express company's warehouse by employees to decide as to which of these places certain goods should be delivered, and that in one shipment in particular, consisting of seven or eight pieces, "one or two of the boxes were marked one way and the balance the other, and I was asked to pass on them, as to who to make delivery to."

There was similar trouble with freight shipped in. The freight agent testified to the receipt of freight billed to one company and marked to the other, "sometimes it would be marked with both names on it, and we would have trouble in telling who it belonged to." Indeed, there were occasions on which the confusion was so pronounced that, upon joint written notice to appellant and respondent, the freight agent required them to go to the station and decide which of them was entitled to the freight.

Mr. Hess was the only witness on behalf of respondent. He admitted some confusion over shipments by freight. He stated that no one had called at his place, that he remembered of, calling for any one at the other place of business, and that there had been no confusion of telephone calls, since his business name had been given a place in the directory, that he ever heard about; that he worked outside a great deal of the time; that he didn't remember any mail delivered at his place intended for the appellant.

[1] The names "Electric Supply Company" and "Electric Service Company" are very much alike, especially if we consider that matter from the viewpoint of the nature of the business these parties are engaged in, the mercantile business, repair and construction work, and the fact that they are dealing with the general public. The use of the words for a name descriptive of a new business is not involved. Those taken by the appellant for its name were to identify it, as it engaged in a kind of business already well known. During all the years involved, no one interested in the appellant corporation, or theretofore in the partnership, or while doing business alone, has ever used in the business his personal name or that of any other than Electric Supply Company. For the sake of a name in which their business was to be conducted and become known, they have steadfastly employed the chosen name. That combination of words in that locality means the business conducted by the appellant corporation.

The words employed for that purpose are common ones, and in a way may be said to belong to the general public. They are, as the writers say, *publici juris;* common, descriptive, generic words, in the use of which appellant is not entitled to protection pri-

marily, but only in the event that, by the use of them, they have acquired a secondary meaning, as that term is known in this branch of the law, discussed by respective counsel in this case. The doctrine is not abstruse or complicated, though its application may sometimes be difficult. Nims, Unfair Competition and Trade Marks (2d ed.), discussing this subject, employs the very common understandable saying at § 37, p. 67:

"Secondary meaning is *association*, nothing more."

That is, that the words, though primarily belonging to the public, have been associated with one's business in such way and for such length of time that they are generally understood by the public as referring to that one's business. In this connection another rule must be kept in mind, as mentioned in *Rosenburg v. Fremont Undertaking Co.*, 63 Wash. 52, 114 Pac. 886,

"Nor need one trade-name, in order to be an infringement upon another, be exactly like it in form and sound. It is enough if the one so far resembles the other as to deceive persons of ordinary caution into the belief that they are dealing with the one concern when they use the name of the other."

The application of this doctrine in any given case must, of course, depend upon the facts peculiar to the case. In this case we are not advised of the trial court's views for the judgment of dismissal, other than the suggestion in the respondent's argument here that the case of *Diamond Drill Contracting Co. v. International Diamond Drill Contracting Co.*, 106 Wash. 72, 179 Pac. 120, so much relied on by the respondent, was favorably considered by the trial court. That case, however, does not fix the result to be reached in this case. In that case it was stated that:

"If the second company has taken the name of a corporation theretofore existing or taken a name which is so similar thereto as to be misleading, we can pre-

vent, in this action, the second company from continuing to use such name."

That statement was made in view of a statute upon the subject under consideration, but the principle involved is the same under the general rules and power of a court of equity, where the person complained of is not a corporation, and in the absence of some statute controlling the situation. After the statement in that case just referred to, it was then stated, "that this is a question of fact." The evidence in the case was then reviewed, and it was said that there was no evidence produced showing there had been any loss of business to the complaining party. The present case is different in that respect. Again—and it is important—in that case special mention was made of the necessity, in determining whether names are misleading because of similarity, of paying attention to the nature and kind of business involved, and the classes of people with whom the business was transacted. In this respect it was said:

"The testimony here shows that the drill contracting business is confined to a very narrow field; the general public never is a customer. The activities of these companies is confined nearly exclusively to operating for mining men and concerns, and among such customers it is generally known who are available in the drilling field, and the corporate name does not mean as much as the reputation of the individual who does the actual drilling. No commodity or service is being offered to a large class of prospective customers by the respondent and appellant, but a very small group ever is in the market for this service, and this group is engaged in such business and is composed of such persons that the chance of any of them being misled by such similarity as exists in the two names here involved is remote indeed. The evidence does not disclose that there has been any such misleading, and we cannot say,

as a matter of fact, that the evidence satisfies us that the names are so similar as to be misleading.''

Still further, in that case, after finding that the plaintiff had not organized a new business, that is a new kind of business, the question of the secondary meaning of words used in a trade name was considered and discussed. The general rule was clearly stated, but found not to be applicable under the facts of that case for the reason that:

''The evidence does not show that the words 'Diamond Drill Contracting Company' have ceased to have their usual meaning as indicating a company engaged in the business of contracting to drill with diamond drills, and have now the meaning and are generally understood by the public as referring only to the respondent. The only evidence tending to show this was the evidence of one witness for the respondent, who testified that he knew of no other company by the name of 'Diamond Drill Contracting Company,' and that to his mind that name meant the respondent. This evidence is not sufficient.''

A rather full statement of the facts in this case has heretofore been given in this opinion, which statement is of itself sufficient argument to show that, because of the similarity of the names, the one adopted by the respondent is an infringement on the rights of the appellant, considering the class of the business and the general public with whom they are dealing, and that the appellant not only presumptively will but actually has suffered loss. There is no question of fraud involved in the case, nor need there be any. *Martell v. St. Francis Hotel Co.,* 51 Wash. 375, 98 Pac. 1116, 16 Ann. Cas. 593.

This case is similar in principle to that of *Seattle Taxicab Co. v. de Jarlais,* 135 Wash. 60, 236 Pac. 785, and, following a suggestion made in that case and applying it here, it would seem that at small expense the

respondent can speedily change its name to one so dissimilar to that of the appellant that misleading, loss and confusion in the future will be avoided. This result and course will, of course, be much less burdensome to the respondent than it would otherwise be, because of the fact that it has been engaged in business of this kind in this locality a comparatively short time.

Reversed and remanded to the lower court with directions to enter a judgment in favor of the appellant.

TOLMAN, C. J., MAIN, MACKINTOSH, and PARKER, JJ., concur.