[No. 27786.  Department Two.  April 18, 1940.]

SEATTLE STREET RAILWAY & MUNICIPAL EMPLOYEES RELIEF ASSOCIATION, *Respondent*, v. AMALGAMATED ASSOCIATION OF STREET, ELECTRIC RAILWAY AND MOTOR COACH EMPLOYEES OF AMERICA *et al., Appellants.*[1]

[1]Reported in 101 P. (2d) 338.

*Will G. Beardslee* and *George F. Ward,* for appellants.

*Cissna, White & Baum* and *Leon L. Wolfstone,* for respondent.

STEINERT, J.—This action involves, primarily, the superior right to the use of certain descriptive names and certain component words thereof. Plaintiff, a corporation, sought by its complaint (1) to enjoin defendants from the use by them of the designated names or any names similar thereto, (2) to enjoin defendants from publicly asserting or representing that plaintiff was guilty of fraud in conducting its activities under such names, and (3) to recover damages sustained by reason of defendants' alleged malicious assertions and representations concerning plaintiff, and by reason of defendants' alleged wrongful use of the names designated. Defendants, comprising an international union, a local division thereof, and a number of officers and members of the local together with their wives, answered and, by cross-complaint, in turn sought (1) to enjoin plaintiff from using the names above referred to, or any similar names, (2) to enjoin plaintiff from representing to the public that its activities were conducted for the benefit of individuals represented by defend-

ants, and (3) to obtain an accounting of funds acquired by plaintiff through its alleged former misrepresentations.

Upon the applications of the respective parties, show cause orders for temporary injunctions were issued, and upon a hearing thereon by the court, a decree was entered granting, in part, defendants' application for a temporary injunction against plaintiff, but at the same time enjoining defendants from using plaintiff's corporate name, or any name similar thereto, and from making any derogatory statements concerning the character of the organization, the mode of operation, or the composition of the membership, of plaintiff corporation. From the adverse portions of the decree, defendants have appealed.

In a case of this kind, a decision is peculiarly governed by the facts involved. We will, therefore, endeavor to state, as clearly as possible, the train of facts and events which the parties themselves concede have produced a fabric of confusion.

Appellant Amalgamated Association of Street, Electric Railway and Motor Coach Employees of America, hereinafter referred to as "Amalgamated," is an international association which was organized in 1892 for the benefit and betterment of employees engaged exclusively in street car and motor coach transportation. It is popularly known as the "Street Car Men's Union." Throughout the United States, Amalgamated has subordinate local branches, called "divisions," having, for identification purposes, separate and distinct numbers, and all being subject to the control and supervision of the parent association. One of these divisions, established in Seattle in 1912, is the appellant designated Local Division No. 587. It is popularly referred to as the "Seattle Street Car Men's Union," and now has a membership of approximately fifteen hundred men.

Sometime within, or about, the year 1919, certain of the members of Local Division No. 587, all being street railway employees, formed and became members of an unincorporated relief association which functioned under the name of "Seattle Street Railway Employees' Relief Association," sometimes referred to as "Seattle Street Car Men's Relief Association." On October 11, 1919, the unincorporated relief association was incorporated under the fraternal law of the state of Washington. The name theretofore used was retained and declared to be "Seattle Street Railway Employees' Relief Association." Its membership was by its articles limited to regular and active employees of the Seattle street car system. Its object was declared to be "to provide and afford relief to such active members as may be sick, injured, or disabled," etc. It had a board of nine trustees, from whose number were elected its executive officers. The unincorporated relief association was, thus, the origin and genesis of respondent herein, although it will be noted that it now bears a slightly different name.

After its organization, and until December, 1929, the fraternal corporation, though maintaining its separate existence and function, operated within the framework, and under the control, of the local union. It had no separate office of its own, but conducted its affairs entirely from the office of the union, which paid all overhead expense. During practically that entire period, Mr. Walter White, who was then a member of Local Division No. 587, was the secretary of the corporation and the dominant personality in the conduct of its affairs.

In September, 1929, Amalgamated, which was the international and parent association, at its biennial convention amended its laws to permit the local divisions themselves to adopt and regulate sick benefits.

That was a power which the locals had not theretofore directly possessed. At the same time, also, the amendment provided that "no sick relief, or accident benefit association shall be recognized unless controlled by the [parent union]."

Upon the adoption of the amendment, the officers of Local Division No. 587 conferred with Mr. White and advised him that the new regulation would have to be obeyed strictly; that private administration of relief would no longer be permitted; and that the corporation, and all matters of relief, would have to be brought under the full control of the officers of the local union; or else, that the corporation would have to change its name and thereafter function as an independent relief agency. Mr. White, however, was unwilling to place the corporation under the authority of the union. After a series of conferences between those concerned, Mr. White, representing the corporation, agreed that its name should be changed and that it would thereafter operate as an independent agency. Mr. White's purpose, as then expressed by him, was to broaden the field of administering relief by accepting all city, county, and state employees as eligible to membership in the corporation.

Accordingly, on December 4, 1929, the corporation filed with the secretary of state supplemental articles of incorporation, changing its name from "Seattle Street Railway Employees' Relief Association" to "The Associated Railways and Municipal Employees' Relief Association," and making eligible to membership any employee of the city of Seattle regularly and actively employed in any department except the police and fire departments, and also making eligible such other persons of good health and habits as should be approved by the board of trustees.

During the month of December, 1929, and after the

conferences and agreement above mentioned, Local Division No. 587, through its duly elected officers, perfected a plan for the organization of a relief association within the framework and under the direct control of the local, in accordance with the 1929 constitutional amendment by the parent body. In January, 1930, the plan was put into effect by the local union through the adoption of by-laws and regulations establishing a relief agency under the name "Street Car Men's Sick and Relief Association of Division 587," elsewhere referred to in the by-laws as "The Street Car Men's Relief Association," and limiting its membership exclusively to such employees of the Seattle street car system as were members of the local division. This association has since been known and referred to by some as the "Union Relief Association."

On April 25, 1930, which was within four months after Local Division No. 587 had launched its relief agency under the name of "Street Car Men's Sick and Relief Association of Division 587," respondent, through Mr. White, and under its then identity of Associated Railways and Municipal Employees' Relief Association, procured from the secretary of state a certificate of trademark of the name "Seattle Street Railway Employees' Relief Association," to be used in connection with an emblem of a street car upon printed matter. Application for the certificate was made without notice to any of appellants. This trademarked name, it will be observed, was the very name under which respondent had originally been incorporated, but which it had agreed, in December, 1929, to discontinue.

Again, on May 23, 1930, and likewise without notice to appellants, respondent, through Mr. White and under the corporate name of "The Associated Railways and Municipal Employees' Relief Association," procured from the secretary of state a certificate of trade-

mark of the name "Seattle Street Car Men's Relief Association," to be used in the same manner as in the preceding application. This latter name, it will be observed, closely approximates that which the appellant local had adopted for its own relief agency in the preceding January.

About this time, there occurred an event which, taken in connection with what subsequently transpired, brought this controversy to a head. It appears that, from the time of its organization in 1919 to the year 1929, respondent, under its original name of "Seattle Street Railway Employees' Relief Association," had annually given a ball for the purpose of raising money for its hospitalization fund. On September 19, 1930, which was after the consummation of the severance agreement referred to above, respondent, whose name had then been changed to "Associated Railways and Municipal Employees' Relief Association," held its twelfth annual ball. The tickets which were issued and sold bore respondent's amended corporate name, Associated Railways and Municipal Employees' Relief Association, in very small type, underneath which, in large red type, were the words "The Seattle Street Car Men's Relief Ass'n," followed by a large emblem picturing a street car with the words "Seattle Municipal Street Ry" printed thereon.

The sale of these tickets provoked protests not only from Local Division No. 587, but also from the police and fire departments, which were in the habit of sponsoring similar events annually for hospitalization and relief purposes. These protests were based on complaints from local businessmen and merchants who had customarily bought tickets upon such occasions, but who felt that they were being called upon too frequently.

With respect to the situation that obtained at that

time, the trial court, in its memorandum decision, stated:

"Without citing details or instances, it is sufficient to say that the indiscriminate use by plaintiff [respondent] of these various names, terms, designs, facsimiles, etc., did result, before the end of 1930, in great confusion, and purchasers were deceived into patronizing plaintiff [respondent] when they thought they were patronizing defendant [appellant]."

The situation thus obtaining produced its repercussions. In the latter part of 1930, charges were filed by Local Division No. 587 against Mr. White, then still a member of the local, for actions and conduct detrimental to the organization. As a result of those charges, Mr. White was expelled from the local division in December, 1931.

In the meantime, on January 16, 1931, and during the period of ill-feeling engendered by the existing conditions, respondent, without the knowledge of appellants, filed second amended articles of incorporation changing its name from "The Associated Railways and Municipal Employees' Relief Association" to "The Seattle Street Railway and Municipal Employees' Relief Association," which is respondent's present corporate name.

Mr. White testified that the reason for the change was that the word "Associated" in the former amended corporate name had caused confusion. We pause in our narrative of the facts to observe that, if the word "Associated" caused confusion, the complete change of name, as provided for by the later amendment, would tend to augment, rather than to obviate, that confusion.

In 1931, after the second change of corporate name, respondent gave its thirteenth annual ball and issued tickets bearing the name "The Seattle Street Railway & Municipal Relief Association."

From 1932 to 1938, respondent has not attempted to give an annual ball. The reason advanced by Mr. White for the discontinuance was that a ball was unnecessary, inasmuch as all bills had been paid "without the aid of those donations." Respondent has, however, continued to use the name "Seattle Street Railways and Municipal Relief Association" on its letterheads and other printed matter.

During this same period from 1932 to 1938, Local Division No. 587 has regularly held an annual ball, under the name "Street Car Men's Relief Association of Division 587," and has sold its tickets widely among businessmen, merchants, and the public generally. The event is recognized by the Seattle Chamber of Commerce, the Better Business Bureau, and similar institutions.

So far as the record discloses, there does not seem to have been any particular friction between the contending parties during the period from 1932 to 1938. This may be accounted for by the fact that, during that period, respondent did not give an annual ball and, hence, had no occasion to sell tickets to the public. Reference might be made, however, to the February 25, 1935, issue of respondent's weekly paper, "Seattle Journal," in which, under a large headline captioned "The Union's Family Tree," was set forth the history of the "Seattle Street Car Men's Relief Association," given "birthright by the Street Car Men's Union, Local 587." Its readers were exhorted, in the body of the article, to give "hearty applause" and undivided support to a "relief association that has no competition;" intending, of course, to have reference to respondent.

At this point, it is proper to mention that the relief association sponsored by appellant Local Division 587 has over fourteen hundred members, all of whom are employees of the Seattle street car lines. Respondent

has four hundred forty-four members, not more than two hundred eighteen of whom are street railway employees.

We now come to the focus of this controversy. On December 30, 1938, Local Division 587 gave its annual ball. Tickets therefor were sold through a system of canvassing mercantile establishments and business offices. Thereafter, in January, 1939, certain solicitors began selling tickets to a "Seattle Street Car Men's Relief Association" annual ball to be held in the following June. Coming so soon after the December ball, this sale of tickets resulted in inquiries and protests being made to the local division and also to the city railway department. These inquiries and complaints came from individuals and from civic organizations. As a result of such inquiries, the financial secretary of local 587 mailed out the following letter for general circulation:

"It has come to the attention of the officers and members of the Street Car Men's Relief Association that some person or organization, using the name of the Street Car Men's Relief Association, are at this time calling on merchants and others in an attempt to sell tickets to a dance.

"We wish to notify the public that the Street Car Men's Relief Association, which has offices at 317 Smith Tower, held their annual ball in the Eagles Auditorium Dec. 30, 1938, and anyone attempting to collect funds for the organization at this time is doing so under false representation."

About the same time, the following article appeared in one of the Seattle newspapers:

"DANCE TICKET SALE DECLARED FRAUD

"Seattle residents were warned yesterday by J. L. Elder, financial secretary of the Street Car Men's Relief Association, that some person or organization is attempting to sell tickets to a dance through false representation.

"The ticket sellers, he said, are pretending to represent the association, but the organization held its annual ball on December 30 and is not soliciting funds at this time."

It appears that, in January, 1939, respondent had planned to give a ball in June, in order to raise funds for its activities. In pursuance of its plan, it printed tickets bearing the name of "Seattle Street Railway Employees' Relief Association," and began disposing of them in the manner above stated. Owing to the circularization of the letter written by Local Division 587 and the accompanying newspaper publicity, respondent's solicitors were subjected to much criticism and were, they claimed, greatly humiliated. In any event, they refused to make further solicitations for the sale of respondent's tickets.

Thereupon, in April, respondent instituted this action, seeking injunctive and compensatory relief against appellants, as indicated in the beginning of this opinion. Appellants countered with a demand for similar relief.

This concludes our statement of the facts upon which decision is to be rendered. We turn now to the law governing the situation.

The question involved in the case before us is that of unfair competition in the use of a trade name. Upon that subject, we need go no further than to our own cases, as subsequently noted herein. From those cases the following rules may be deduced.

■ (1) The right to use a particular name as a trade name belongs to the one who first appropriates and uses it in connection with a particular business. This rule is basic and is supported by all the cases hereinafter cited.

■ (2) A person, whether individual or corporate, may not use any name, not even his or its own, which is

the distinctive feature of a trade name already in use by another, if such use by the one person tends to confuse, in the public mind, the business of such person with that of the other. *Martell v. St. Francis Hotel Co.,* 51 Wash. 375, 98 Pac. 1116; *Eastern Outfitting Co. v. Manheim,* 59 Wash. 428, 110 Pac. 23, 35 L. R. A. (N. S.) 251; *Wright Restaurant Co. v. Seattle Restaurant Co.,* 67 Wash. 690, 122 Pac. 348; *Groceteria Stores Co. v. Tibbett,* 94 Wash. 99, 162 Pac. 54, L. R. A. 1917C, 955; *New York Life Ins. Co. v. Orpheum Theater & R. Co.,* 100 Wash. 573, 171 Pac. 534; *Diamond Drill C. Co. v. International D. D. C. Co.,* 106 Wash. 72, 179 Pac. 120; *Electric Supply Co. v. Hess,* 139 Wash. 20, 245 Pac. 27; *Queen Anne Candy Co. v. Woolworth Co.,* 165 Wash. 143, 4 P. (2d) 844; *Washington Barber & Beauty Supply Co. v. Spokane Barber & Beauty Supply Co.,* 171 Wash. 428, 18 P. (2d) 499.

■ (3) The prior user may be entitled to relief regardless of actual fraud or intent to deceive on the part of a subsequent appropriator. *Martell v. St. Francis Hotel Co., supra; Wright Restaurant Co. v. Seattle Restaurant Co., supra; San Francisco Oyster House v. Mihich,* 75 Wash. 274, 134 Pac. 921; *Electric Supply Co. v. Hess, supra; Queen Anne Candy Co. v. Woolworth Co., supra.*

■ (4) To acquire the right to use a particular name, it is not necessary that the name be used for any considerable length of time. It is enough to show that one was in the actual use of it before it was begun to be used by another. *Rosenburg v. Fremont Undertaking Co.,* 63 Wash. 52, 114 Pac. 886. But *cf. San Francisco Oyster House v. Mihich, supra.*

■ (5) A trade name may be abandoned or given up by the original appropriator, and, when it is so abandoned or given up, any other person has the right to seize upon it immediately, and make use of it, and

thus acquire a right to it superior not only to the right of the original user, but of all the world. *Rosenburg v. Fremont Undertaking Co., supra.*

█ (6) A trade name, in order to be an infringement upon another, need not be exactly like it in form and sound. It is enough if the one so resembles another as to deceive or mislead persons of ordinary caution into the belief that they are dealing with the one concern when in fact they are dealing with the other. *Rosenburg v. Fremont Undertaking Co., supra; San Francisco Oyster House v. Mihich, supra; Groceteria Stores Co. v. Tibbett, supra; Electric Supply Co. v. Hess, supra; Washington Barber & Beauty Supply Co. v. Spokane Barber & Beauty Supply Co., supra; Olympia Brewing Co. v. Northwest Brewing Co.,* 178 Wash. 533, 35 P. (2d) 104.

█ (7) The rule is no different when the name, or some part thereof, is a geographical name, or contains descriptive words which have acquired a secondary meaning. *Rosenburg v. Fremont Undertaking Co., supra; Diamond Drill C. Co. v. International D. D. C. Co., supra; Electric Supply Co. v. Hess, supra; Washington Barber & Beauty Supply Co. v. Spokane Barber & Beauty Supply Co., supra; Olympia Brewing Co. v. Northwest Brewing Co., supra.*

█ (8) Prior right to the use of a name will be protected by injunction against others using it unfairly. *Martell v. St. Francis Hotel Co., supra; Wright Restaurant Co. v. Seattle Restaurant Co., supra; San Francisco Oyster House v. Mihich, supra; Groceteria Stores Co. v. Tibbett, supra; New York Life Ins. Co. v. Orpheum Theater & R. Co., supra; Electric Supply Co. v. Hess, supra; Queen Anne Candy Co. v. Woolworth Co., supra; Washington Barber & Beauty Supply Co. v. Spokane Barber & Beauty Supply Co., supra; Olympia Brewing Co. v. Northwest Brewing Co., supra.*

While the cases hereinabove cited dealt with commercial businesses and, for the most part, with tangible things sold by them, the principle involved is no less applicable to transactions such as are involved in this case. The underlying concept is that of unfair competition in matters in which the public generally may be deceived or misled.

Applying these principles to the case at bar, we see no escape from the conclusion that, upon the facts as shown by the evidence, respondent's use of the names "Seattle Street Car Men's Relief Association" and "Seattle Railway Employees' Relief Association" constituted unfair competition and was wrongful.

Although respondent, while operating under the framework of Local Division No. 587, had originally appropriated and used those names, it had, pursuant to agreement upon severance of its connection with the local division, discontinued that usage and taken a different name. Thereafter, the local division appropriated the substance, and practically the identical form, of those names, and has ever since conducted its relief agency thereunder. Its right thereto thus became superior. There can be no doubt that confusion has resulted from respondent's use of such names together with the facsimile of a street car upon its tickets. In fact, it is conceded that there is confusion. One can hardly read the statement of this case without himself becoming confused by the various changes that have occurred in the use of names by the respective parties. That such confusion has worked, and will continue to work, injury upon appellants in the conduct of its relief activities, is fully attested by the evidence. More than that, the confusion has operated and, unless prevented, will continue to operate to the detriment of the public. It seems to us that, upon a general sale of tickets to a ball, the purchasers should at least

know which ball they are to attend, if they wish to go, and that, if they are generous enough to give financial support to a charitable cause, they ought at least to have the satisfaction of knowing in what direction their money has gone.

We think that the court was entirely correct in enjoining respondent from the continued usage of the names "Seattle Street Car Men's Relief Association" and "Seattle Railway Employees' Relief Association."

However, the court also found that the letter and newspaper article, above mentioned, which appellants had authorized, were, although not unprovoked, nevertheless unfair, unwarranted, and unjustified, because they failed to state that the ticket sales therein referred to were being made by members of respondent association and failed to distinguish that association from appellants' association. The court further decreed that respondent had lawful right to use its corporate name "Seattle Street Railway and Municipal Employees' Relief Association," and enjoined appellants from using such corporate name or any name deceptively similar thereto. It further enjoined appellants from making certain derogatory statements concerning respondent's organization (the details of which are too long to set forth specifically), and from using any name or making any representation designed to convey the impression to the public that respondent was not a relief agency having in its membership individuals employed in the street railway system. The decree concluded by stating that its intent and purpose was to hold that both agencies concerned in this litigation were legitimate relief agencies, and that each was entitled to live, function, and develop on its own merits without unfair or unjust hindrance at the hands of the other, and that each was enjoined to be fair and to refrain from the use of words, practices, or other

means which would in any way hinder, injure, or otherwise harm the other in the lawful, uninterrupted pursuit of its functions. Each was required to execute a bond in the sum of one thousand dollars conditioned to pay all damages and costs that might accrue by reason of the issuance of the respective restraining orders.

While we realize that the trial court was earnestly and conscientiously endeavoring fairly to adjust a difficult and complicated situation, and while we have no criticism of the general spirit of the decree, we do not agree with some of the conclusions drawn by the court from the evidence.

We do not believe that the letter or newspaper article above referred to was unfair, unwarranted, or unjustified. On the contrary, we believe that, under the circumstances, the appellants did no more than what they had the legal and moral right to do, and, further, that the public was entitled to some such information.

For the reasons already stated herein, we do not believe that respondent has, or at the times with which we are now concerned had, the right to use such portion of its present name as is included in the words "Seattle Street Railway."

We do not believe that the evidence supports a finding that appellants have made, or intend to make, derogatory statements concerning respondent's organization or that a restraining order should have been issued against them in that respect. Further, we do not believe that the evidence warrants a finding that appellants have made, or intend to make, any representation to the public conveying the impression that respondent was not a relief agency or that it did not have street car employees in its membership; hence, no order should have been made restraining appellants on those grounds.

The decree granting a temporary injunction against appellants, in the respects noted, is reversed, and the cause will be remanded with direction to the trial court to enter, in its place, a decree in conformity with the views herein expressed.

BLAKE, C. J., BEALS, GERAGHTY, and JEFFERS, JJ., concur.

[1]Reported in 101 P. (2d) 351.