[No. 22907.   Department Two.   November 9, 1931.]

QUEEN ANNE CANDY COMPANY, *Respondent,* v. F. W.
WOOLWORTH COMPANY, *Appellant.*[1]

[1]Reported in 4 P. (2d) 844.

144

*G. Wright Arnold* (*Henry B. Floyd, Lloyd R. Savage,* and *Clinton L. Mathis,* of counsel), for appellant.

*William A. Gilmore,* for respondent.

BEELER, J.—The appellant operates retail stores in several towns and cities throughout this state, and among other things sells candy and confectionery products. In April, 1929, it extensively advertised for sale the candy and confectionery products manufactured and placed on the market by the Queen Anne Candy Company of Hammond, Indiana, referring to them as "Queen Anne" candies.

The respondent brought this action, both upon the theory of trademark infringement and unfair business competition, to enjoin the appellant from selling these products in this state under either the name "Queen Anne Candy Company" or "Queen Anne", unless made by the respondent. The appellant denied that there had been either trademark infringement or unfair business competition, and alleged that the trademark and trade name of the respondent were *publici juris,* and that the respondent, by reason of its acquiescence and laches, was not entitled to the relief sought. The trial court enjoined the appellant from selling or displaying for sale any confectionery or candy bearing the name "Queen Anne Candy Company" of Hammond, Indiana, or labeled "Queen Anne", except the products of the respondent. This appeal is from that decree.

The record is voluminous, and after a lengthy hearing the trial judge made extensive findings of fact.

A review of the essential findings is necessary in order to discuss the problem submitted for our consideration:

"(2) The court further finds that the plaintiff and its predecessors in interest since the year 1909 have been and are now engaged in the manufacture and sale of confectionery products in the city of Seattle, selling such products to retail candy and confectionery stores, cigar stands, and others throughout the state of Washington for resale to the general public.

"(3) The court further finds that the plaintiff and its predecessors about the year 1909 adopted and began to use the trade-mark 'Queen Anne' to distinguish its said products, and has continuously since then used, and now uses, such trade-mark throughout the state of Washington, and the same has always designated and distinguished, and does now designate and distinguish plaintiff's aforesaid products throughout the state of Washington. That the said trade-mark 'Queen Anne' was duly registered by plaintiff in the manner provided by law in the office of the secretary of state at Olympia on or about the 27th day of December, 1927. That the said trade-mark 'Queen Anne' has been applied to all boxes, cartons and containers of various kinds, and to individual wrappers of single pieces sold throughout the state of Washington since about the year 1909 and is now so applied.

"(5) The court further finds that the plaintiff has built up an established candy business in the state of Washington. Its candies, consisting of box candies and candy bars, have been extensively advertised and sold under the name of 'Queen Anne' candies. Plaintiff was the first concern in the state of Washington to use the words 'Queen Anne' to designate all its products consisting of box candies and candy bars. It has changed from time to time the form, shape and size of its labels, but it has always used the word 'Queen Anne' or 'Queen Anne Candy Co.' in connection with all its products and in advertising and selling the same. So far as the public trade generally in Seattle and throughout the state of Washington is concerned, the words 'Queen Anne,' when applied to candy

and candy trade, have acquired a meaning as denoting the goods of plaintiff.

"(6) The court further finds that the trade-marks and trade-name of. 'Queen Anne' have come to distinguish the goods of plaintiff in the candy trade throughout the state of Washington from the goods of all other dealers in confectionery products.

"(7) The court further finds that plaintiff's trade-mark and trade-name of 'Queen Anne' has now and prior to the entry into the markets of the state of Washington of the goods and products sold by the defendants, had become well and favorably known throughout the state of Washington by reason of plaintiff's established reputation and style of doing business and because of the expenditure of large sums of money in continuously and persistently advertising and exploiting the same in connection with its aforesaid confectionery business within the state of Washington, and has come to be known and accepted by the confectionery trade, wholesalers, jobbers, dealers and the public generally throughout the state of Washington as the property of plaintiff, representing a large good will value.

"(8) The court further finds that the Queen Anne Candy Company of Hammond, Indiana, is an Illinois corporation and a manufacturer of candy, making a candy which it designates as nut roll and nut cube and that the said Queen Anne Candy Company of Hammond, Indiana, has no office or place of business in the state of Washington; had been trying to sell at times and at times had sold its goods in the state of Washington through jobbers; and the defendant, Woolworth Co. in April, 1929, extensively advertised the products of the Queen Anne Candy Company of Hammond, Indiana, referring to them as Queen Anne candies. That during or about this time, they made window displays of the candy of said company in their stores in Seattle. That, during this period, the defendant, Woolworth Co., by signs and otherwise displayed and advertised this candy as 'Queen Anne' candy without advising the purchasers that it was not the product of the plaintiff. On several of the pack-

ages and wrappers the words 'of Hammond, Indiana' followed the words 'Queen Anne Candy Co.,' the words 'Hammond' and 'Hammond, Indiana' being in much smaller lettering than the words 'Queen Anne.' The trade-mark or trade-name on the individual pieces of Hammond goods is on the part of the wrappers not exposed to the public and is concealed beneath the goods, and which trade-mark the customer cannot see until he has actually carefully examined the piece while in his own hands. That several persons such as the witnesses Robinson and J. L. Butler, during this sale, upon calling for Queen Anne candy from the defendant, Woolworth Co. were furnished with the product of the Queen Anne Candy Company of Hammond, Indiana.

"(9) The court further finds that the plaintiff's trade-name and corporate name of 'Queen Anne Candy Company' had become known throughout the state of Washington as the distinguishing name of the plaintiff as representing plaintiff and plaintiff's products prior to the entry into the markets of the state of Washington of a confectionery product of said Queen Anne Candy Company of Hammond, Indiana as sold by the defendant Woolworth & Co. That the said trade-name and corporate name of 'Queen Anne Candy Company' has a large value to plaintiff, representing plaintiff's good-will, good name and reputation in its business and such value has been continuously and steadily built up by plaintiff by fair business dealings, the superiority of its products and by the expenditure of large sums of money in advertising.

"(10) The court further finds that, while the Purity Candy Company of San Francisco prior to the formation of the Queen Anne Candy Company of Seattle used the words 'Queen Anne' to designate a class of its candy, the Queen Anne Candy Co. of Seattle, Washington was the first concern in the state of Washington to use the words 'Queen Anne' to designate all its products. While it has changed from time to time the form, shape and size of its labels, it has always used the words 'Queen Anne' in connection with all its products. The mere fact that the Purity Candy Company may have used the words

'Queen Anne' in connection with its candy is not available to the defendants in the case at bar because (1) there is no privity between the Purity Candy Company and the defendants, (2) because the evidence does not disclose that there was ever any real competition between the Purity Candy Company and the plaintiff, and (3) the evidence fails to disclose that the Purity Candy Company ever sought to directly or indirectly confuse its product in the minds of the public with that of the plaintiff, and (4) that there is no evidence of acquiescence by the plaintiff in the use of the words by the Purity Candy Co. since the registration of the words by the plaintiff in the state of Washington.

"(12) The court further finds that the defendant, Woolworth Co., with full knowledge of the manufacturing, corporate and trade-name and corporate name of plaintiff and plaintiff's adoption and use of the trade-mark and trade-name of Queen Anne, and with knowledge of the rights of plaintiff, offered for sale under a similar name of 'Queen Anne,' boxes and packages of candy in such a way and manner as would tend to deceive or mislead or confuse the purchasing public into believing that they were purchasing the plaintiff's goods to the injury and damage of plaintiff, and that said defendant, Woolworth Co. was and had been threatening to continue so to sell said products of the Queen Anne Candy Company of Hammond, Indiana as Queen Anne candies throughout the state of Washington. That the plaintiff has never acquiesced in the use of the words 'Queen Anne' by the Queen Anne Candy Co. of Hammond, Indiana, in the state of Washington, and that the plaintiff has repeatedly sought to prevent that company from using such words in the territory covered by the plaintiff, and that this action was started promptly when the defendant, Woolworth Co. commenced to advertise and expose for sale in the state of Washington, the product of the Queen Anne Candy Company of Hammond, Indiana as Queen Anne Candy."

While the Queen Anne Candy Company of Hammond, Indiana, is not a party litigant, it is vitally con-

cerned in these proceedings. Its counsel appeared as one of the attorneys for the appellant in this court.

At the outset, it should be clearly kept in mind that the appellant was not enjoined from selling the candy and confectionery products of the Queen Anne Candy Company of Hammond, Indiana, but merely from selling them under the names "Queen Anne" or "Queen Anne Candy Company."

While it is contrary to the spirit of our laws to interfere with fair competition, yet there are certain recognized property rights which are, of necessity, monopolistic in their character, such as those accorded by patent and copyright, and those somewhat akin thereto, as the right of those engaged in trade and commerce under a trade name to be protected from unfair competition in the use thereof. The principle "that nobody has the right to represent his goods as the goods of somebody else," is firmly imbedded in the law. A person may not choose a trade name previously adopted by another in the same kind of business, if the one who first selected the name is injured, or if the general public is deceived, thereby. We have frequently applied this rule in cases involving unfair business competition.

In the case of *Rosenberg v. Fremont Undertaking Company*, 63 Wash. 52, 114 Pac. 886, the plaintiff, who had adopted the trade name "The Fremont Undertaking Co.," was protected in its use, and a new-comer who undertook to adopt the trade name "The Fremont Undertaking Company, Inc.," was enjoined from so doing. In that case, as here, injury resulted to the first appropriator, and the purchasing public was frequently deceived by reason of the similarity of the names of the rival concerns. As to the right to the use of a trade name by one who first appropriates it, we there said:

"The right to use a particular name as a trade name belongs to the one who is first to appropriate it and use it in connection with a particular business. To acquire the right to use a particular name it is not necessary that the name be used for any considerable length of time. In a contest between two individuals over such right, therefore, it is enough to show that the one was in the actual use of it before it was begun to be used by the other. . . . The rule is not rested on the principle that the user has a property in a name, but on the principle that it is a fraud on both the person who has established a trade which he carries on under a given name, and the public who trade with the person on the faith of the name, to allow another to assume the same or a similar name for the purpose of selling his own goods or inducing people to trade with him under the belief that they are purchasing the goods of, or trading with, the person who established the name."

This rule has been variously stated and applied in the following cases: *Martell v. St. Francis Hotel Co.*, 51 Wash. 375, 98 Pac. 1116; *Wright Restaurant Co. v. Seattle Restaurant Co.*, 67 Wash. 690, 122 Pac. 348; *Groceteria Stores Co. v. Tibbett*, 94 Wash. 99, 162 Pac. 54, L. R. A. 1917C 955; and *Seattle Taxicab Co. v. De Jarlais*, 135 Wash. 60, 236 Pac. 785. The rule has been frequently applied by courts of other jurisdictions, and the reason for its application is tersely stated in the case of *Mark Realty Corp. v. Major Amusement Co.*, 180 App. Div. 549, 168 N. Y. Sup. 244:

"The law relating to unfair competition has a three-fold object: First, to protect the honest trader in the business which fairly belongs to him; second, to punish the dishonest trader who is taking his competitor's business away by unfair means; and, third, to protect the public from deception."

In 1909, the respondent's predecessors adopted the trade name "Queen Anne Candy Company," and the trademark "Queen Anne," using the face and head

of a fanciful queen in conjunction therewith. The trade name and trademark were applied to all boxes and cartons used in marketing its candy and confectionery products, as well as on all wrappings on individual candy bars. In 1911, the respondent corporation was organized under the laws of this state, and continually thereafter engaged in manufacturing and selling its candy and confectionery goods to retail merchants throughout the state of Washington. It expended large sums of money in advertising its wares, in sending its agents, salesmen and jobbers into every part of the state, and by such means established an extensive and lucrative business.

On the other hand, the Queen Anne Candy Company of Hammond, Indiana, was organized in 1919 under the laws of the state of Illinois. It manufactured its candies and confectionery products in the city of Chicago until 1923, and thereafter at Hammond, Indiana. But its products did not reach this state until 1922, and from that time up to the spring of 1929, sales were made only intermittently, as respondent's officers, on various occasions, remonstrated with and stopped merchants and jobbers of this state from selling and marketing the products of the Hammond company. In April, 1929, the appellant, by extensive advertising, undertook to sell the Hammond products at its various stores, and shortly thereafter this action was brought to prevent such sales.

Thus it is apparent that the respondent's appropriation and use of the name "Queen Anne" in connection with marketing its candy in the state of Washington, was prior to the time when the appellant invaded this field, and therefore the respondent is entitled to injunctive relief, unless it has waived its rights thereto.

"Irrespective of technical trade-marks, courts have long recognized the right of the *first user* of a distinc-

tive dress of goods to protection against use by another of a similar dress or name in unfair competition. The basic principle of the doctrine of unfair competition, though variously expressed, is exceedingly simple. It is just this—no dealer or manufacturer has the right by any name, mark, sign, label, dress or other artifice, to represent to the public that the goods sold by him are those manufactured or produced by another, thus passing off his goods for those of such other to the latter's injury." *Pacific Coast Condensed Milk Company v. Frye & Co.*, 85 Wash. 133, 147 Pac. 865.

■ The appellant next contends that the respondent has forfeited its right to the exclusive use of the trademark and trade name for two reasons: First, because the Purity Candy Company of San Francisco, California, began marketing some of its candy products under the name "Queen Anne" as early as 1907 in the state of California; and second, because the respondent, by an arrangement with the Purity Candy Company, handled and marketed some of the latter's products in conjunction with its own in this state since 1911.

The Purity Candy Company is not a party to this action, nor is there any privity between it and the appellant or between it and the Queen Anne Candy Company of Hammond, Indiana. However, the evidence amply supports the findings that the products of the Purity Candy Company, being penny candy bars, were so dissimilar to the respondent's candies that the purchasing public was in no wise deceived or misled by reason of such joint sale, nor were the sales of the Purity Candy Company in this state of such magnitude as to place those goods in competition with the goods of the respondent.

Furthermore, the respondent was the first to use the trademark "Queen Anne" and the trade name

"Queen Anne Candy Company" in this state, its products having been placed on the market at least two years before the products of the Purity Candy Company reached this state. Being the first in point of time to adopt and use the trade name, no *exclusive* right to such use in the respondent need be shown. In *Wright Restaurant Company v. Seattle Restaurant Company, supra,* the plaintiff had acquired the right to the use of the corporate name and trade name "Chauncey Wright Cafe," and injunctive relief was granted to prevent a competitive restaurant proprietor from using the name "Chauncey Wright" in connection with his restaurant. Applying the rule of unfair competition, we there said:

"This action, if it can be maintained at all, must rest upon unfair competition by the fraudulent use of a trade name. In such a case, no *exclusive* right in the plaintiffs to the use of the name need be shown. 'In fact, the distinguishing feature of cases of unfair competition is the protection of one who has no technical trademark and hence no exclusive property right.' Paul on Trademarks, § 211. But the plaintiff in such a case must have the right to use the name, and he or his predecessor in interest must have actually enjoyed the prior use. When these things are shown, his use of the name will be protected by injunction against others using it unfairly to his injury."

The rule is well stated by Paul on Trademarks, § 211, p. 381:

"Where the question is simply one of unfair competition in trade, it is not essential that there should be an exclusive or proprietary right in the words or labels used in order to enable the plaintiff to maintain an action, as, irrespective of any question of trademarks, a manufacturer has no right by imitative devices to beguile the public into buying his wares under the impression that they are buying those of a rival. In fact, the distinguishing feature of cases of unfair

competition is the protection of one who has no technical trademark, and hence no exclusive property right. A court of equity will thus restrain the fraudulent imitation of a mark, package, or label by which the public may be misled, to the injury of the original user, by one who might rightfully use it under circumstances which relieve from the imputation of fraud. Hence, where a person has established a business in the manufacture and sale of goods, and carries it on under a given name or mark, whether the words or devices adopted by him constitute a trademark or not, another person cannot assume the name or mark, or the same, with a slight alteration, in such a way as to induce others to deal with him in the belief that they are dealing with the person who has given the reputation to the name or mark.''

Furthermore, there was no common user of the trade name ''Queen Anne Candy Company'' in this state so far as the respondent and the Queen Anne Candy Company of Hammond, Indiana, are concerned. The respondent had appropriated and used the names ''Queen Anne'' and ''Queen Anne Candy Company'' to distinguish its products at least ten years before the Queen Anne Candy Company of Hammond was organized, and for thirteen years before the Hammond company undertook to market or vend its products in this state; and by extensive and judicious advertising, combined with the excellence of its products, established a market in this state for its products under its trade name.

The fact that the Queen Anne Candy Company of Hammond, Indiana, had acquired by appropriation and use the right to use the trade name ''Queen Anne Candy Company'' or ''Queen Anne'' to distinguish its candy products in the state of Indiana, and in various other states throughout the Union, and had expended considerable money in advertising its products, does not give it the right to invade this state and market its

products in unfair competition with the products of the respondent. To permit this to be done under the circumstances shown by the evidence, would be unfair both to the respondent and to the general public.

Although we have held that "actual fraud or deception is not necessary in cases like this" *(Martel v. St. Francis Hotel Co., supra)*, yet in the instant case it is established that the words "Hammond, Indiana," at times were printed in very small type following the words "Queen Anne Candy Company" on the products manufactured by that concern; and as a result the general public was deceived and confused in purchasing candy. The evidence is clear that purchasers exercising ordinary care were misled and confused in purchasing candy, acquiring the product of the Hammond candy company when intending to purchase the product manufactured by the respondent. In this regard, the present case is distinguishable from the case of *Vittucci Co. v. Merline,* 130 Wash. 483, 228 Pac. 292, where the similarity of the labels caused no deception, and from the case of *Code v. Seattle Theatre Corporation,* 162 Wash. 379, 298 Pac. 432, where there was neither unfair competition between rival proprietors, nor deception or confusion to the general public, whereas the converse is true here.

Nor would the fact that the respondent since 1920 has used the picture of a fanciful duck in connection with its trademark or trade name "Queen Anne" or "Queen Anne Candy Company"; nor the further fact that, within the last several years, the respondent has applied and used such names as "Hi-Jinx," "Duck Soup," and "A. A. A." on its boxes, cartons and candy bars in connection with its trade name "Queen Anne Candy Company," in any manner deprive it of the right to the injunctive relief it here

seeks, for the reason that, for more than twenty years, the respondent and its predecessors had sold candy and confectionery products and continuously used the trade name ''Queen Anne Candy Company'' or trade name ''Queen Anne'' in connection therewith.

Nor has the respondent waived its right to injunctive relief by reason of laches or acquiescence. It remonstrated and stopped merchants and jobbers of this state from selling the products of the Queen Anne Candy Company of Hammond, Indiana, on various occasions between the years 1922 and 1929, and on the latter date, when the appellant undertook to extensively market them, this suit was promptly brought to restrain such sale.

''Although a person may be precluded by consent or acquiescence from obtaining equitable relief in case of the use by another of a trade mark or trade name, yet he will not be estopped from thus asserting his rights unless he has notice during such acquiescence of the facts concerning such use. And it is said that where consent by the owner to the use of his trademark by another is to be inferred from his knowledge and silence merely, it lasts no longer than the silence from which it springs; being, in reality, no more than a revocable license. So the fact that a corporation adopting a certain trade name or device permitted another corporation conducting a like business, but not in privity with it, to use a similar name or device in its business does not preclude the former from enjoining the latter from using such name.'' 26 R. C. L. 908.

The judgment appealed from is affirmed.

TOLMAN, C. J., BEALS, and PARKER, JJ., concur.