[No. 25154. Department Two. August 14, 1934.]

OLYMPIA BREWING COMPANY, *Respondent*, v. NORTH-
WEST BREWING COMPANY, *Appellant*, E. N.
HUTCHINSON, *as Secretary of State,
Defendant.*[1]

*Patterson & Ross,* for appellant.
*Thos. L. O'Leary,* for respondent.

HOLCOMB, J.— A motion made for the first time
in brief of respondent to strike the statement of facts

[1]Reported in 35 P. (2d) 104.

because no abstract has been served or filed, as provided by statute and by Rule VI of the supreme court, is now denied as not well taken.

The statement of facts contains but 106 pages, including two pages of index and the certificate of the trial judge. The overplus in the statement of facts is so insubstantial as not to justify the granting of the motion, especially when made for the first time in the briefs. *State ex rel. State Bank of Seattle v. Scott,* 102 Wash. 510, 173 Pac. 498; *Schirmer v. Nethercutt,* 157 Wash. 172, 288 Pac. 265.

Respondent brought this action against the secretary of state and appellant for injunctive relief and to compel cancellation of appellant's registered trade mark, both upon the theory of infringement of trade mark and of unfair business competition, to enjoin appellant from making use of the term "Olympic Club" for malt beverages and beer in connection with the manufacture, sale or advertising of its manufactured products, including beer and fermented malt beverages, and from making any use whatsoever of the name "Olympic Club" in its business.

After a trial on the merits, the trial court granted the relief prayed for as against appellant, but denied any relief as against the secretary of state. Hence, the Northwest Brewing Company, a corporation, alone, has appealed.

The trial court refused in its decision to consider the question of interference with the registered trade mark by appellant, basing its decision solely upon the feature of unfair competition by appellant in the state of Washington. Although the briefs have taken a wide range on the part of both parties to this controversy, we shall follow the trial court and discuss only the question of unfair competition in the state of Washington, especially since it appears respondent

has instituted cancellation proceedings in the United States patent office seeking the cancellation of the trade mark "Olympic Club" and "Olympic Club Special," now owned by appellant. Our trade mark statute is unimportant in our view of the law and the facts.

Among other comprehensive findings, the court found that, during the time prior to the period of prohibition, respondent was engaged in the manufacture of its products and sold the same throughout the state of Washington and adjacent states and Alaska; that its trade mark names "Olympia Beer" and "It's the Water" had become well and favorably known throughout the state of Washington and adjoining territory, by reason of its established reputation and style of doing business, and because of the expenditure of large sums of money in continuously and persistently advertising and exploiting the same in connection with its business within the state of Washington, and has come to be known and accepted by the trade, including wholesalers, jobbers, dealers, and public generally throughout the state of Washington as the property of respondent representing a large good-will value; that such trade names and trade marks, including the word "Olympia," "It's the Water," and "Olympia Beer" have become known throughout the state of Washington as the distinguishing name of respondent and as representing it and its products; that such trade names and trade marks have a large value to respondent, representing its good-will, good name, and reputation in its business, and that such value has been continuously and steadily built up by respondent by fair business dealings, the superiority of its products, and by the expenditure of large sums of money in advertising; that on July 1, 1902, respondent changed its name from "Capital Brewing Company

of Olympia'' to ''Olympia Brewing Company'' for the reasons that it had always advertised its product as ''Olympia Beer;'' that it was the most natural name, and many of its customers called the name of the company by the name of the beer for that reason, and that, if that name should be adopted, it would prevent any one else taking it and thus trading on the strength of the reputation that had already been gained and which it was hoped to increase.

It was also found that, on December 15, 1932, appellant filed with the secretary of state an application for registration of the trade mark as attached to the complaint of respondent.

The following finding was then made:

''The court finds that the said defendant, Northwest Brewing Company, is in the business of manufacturing and selling beer and malt products, and for sometime last past has been advertising its products as 'Olympic Club', 'It's the Beer', and 'Olympic Club Special'; that to permit said defendant, Northwest Brewing Company, to continue the use of the words, 'Olympic Club', 'It's the Beer', 'Olympic Club Special' or any other name or group of words containing any word similar in appearance or sound to the word 'Olympia', in connection with its products and in advertising the sale of its products would constitute unfair competition, as the names 'Olympic Club', 'It's the Beer', and/or 'Olympic Club Special' are so similar to the trade marks, copyrights, and trade names of plaintiff, as above set forth; that to permit said defendant, Northwest Brewing Company, to use the names 'Olympic Club', 'It's the Beer', and/or 'Olympic Club Special', in its product would result, and has resulted, in deception and confusion to the general purchasing public; that said plaintiff first appropriated the trade names 'Olympia Beer' and 'It's the Water', for its products prior to the appropriation of the names 'Olympic Club', 'It's the Beer', and/or 'Olympic Club Special', by the defendant, Northwest Brewing Company; that to permit the defendant, Northwest Brewing

Company, to use the names, 'Olympic Club', 'It's the Beer', and/or 'Olympic Club Special', to designate its product would permit said defendant to sell its goods and products to the public who believe that they are purchasing the goods of and are trading with plaintiff; that said defendant would, as a result thereof and by unfair means, take from plaintiff business to which it was in law and fairness entitled; that said defendant claims the right to use the names, 'Olympic Club', 'It's the Beer', and/or 'Olympic Club Special', in connection with its said products, by reason of its application for registration of trade mark filed in the office of the Secretary of State, as aforesaid, on December 15, 1932; that the manufacture and sale of beer was not lawful in the state of Washington until midnight, April 6, 1933; and that plaintiff's application for trade mark of the words 'Olympia' and 'It's the Water', to be applied on lager beer and fermented malt beverages, was filed for record April 7, 1933, at 8 A. M.''

The court further found that respondent's business prior to prohibition was an extensive and lucrative business; and that, on account of its reputation in the trade and the excellence of its products, respondent has every reason to expect to immediately reestablish an extensive and lucrative business in the manufacture and sale of its beer and fermented malt beverages.

The court then found that respondent had no plain, speedy, or adequate remedy at law; and that, unless appellant was enjoined from the further use of the words "Olympic Club," "It's the Beer," "Olympic Club Special," or words of a similar import, appellant would continue the use thereof in connection with the manufacture, advertising and sale of its beer, all to the irreparable damage of respondent.

The decree follows the findings and conclusions of law enjoining appellant, its officers, agents and employees and any and all persons dealing through it, from using the words "Olympic Club," "Olympic Club

Special," and/or "It's the Beer," and any other name or group of words containing any words of similar import in connection with the manufacture, sale or advertising of its manufactured products, including beer and fermented malt beverages.

The errors assigned by appellant in its brief are in denying a motion to separately state and to strike; in overruling its demurrer; in making and entering the findings of fact and conclusions of law; in entering judgment in favor of respondent against appellant; and in denying its motion for a new trial. These several errors are argued under three principal heads, but we shall disregard all of them except the subject of infringement of an established trade name, or unfair competition.

Another contention is argued in the brief that evidence was erroneously admitted, as to which no assignment of error was made in the brief of appellant and will not now be considered.

Many texts and cases from this and outside jurisdictions are cited by appellant as contrary to the decision of the court on the question of infringement of an established trade name, or unfair competition.

No inflexible rule can be laid down as to what conduct will constitute unfair competition. Each case is, in a measure, a law unto itself. Unfair competition is a question of fact. The question to be determined in every case is whether or not, as a matter of fact, the name or mark used by defendant has previously come to indicate and designate plaintiff's goods, or, to state it another way, whether defendant, as a matter of fact, is by his conduct passing off his goods as plaintiff's goods, or his business as plaintiff's business. The universal test question is whether the public is likely to be deceived. 63 C. J. 414. *Pacific*

*Coast Condensed Milk Co. v. Frye & Co.,* 85 Wash. 133, 147 Pac. 865.

At page 416 of 63 C. J., hundreds of illustrations of names, which have been held by courts of last resort everywhere to be deceptively similar, are listed. Among the cases cited, so deciding, are our own cases of *Rosenburg v. Fremont Undertaking Co.,* 63 Wash. 52, 114 Pac. 886, where the names referred to were "Fremont Undertaking Company" and "Fremont Undertaker;" and "Groceteria No. 1" and "Pacific Groceteria," as decided by us in *Groceteria Stores Co. v. Tibbett,* 94 Wash. 99, 162 Pac. 54, L. R. A. 1917C, 955. Among many other names that have been held deceptively similar are "Blue Ribbon" and "Blue Anchor" in *Premier Malt Products Co. v. Kasser,* 23 Fed. (2d) 98, and "Budweiser" and "Budd-Wise" in *Anheuser-Busch, Inc. v. Cohen,* 37 Fed. (2d) 393. Hundreds of others are cited that make a list much too long to include within the proper limits of this opinion, to which reference is made for verification.

In the *Rosenburg* case, *supra,* we held that the rule is not different because the name or some part of it may be a geographical name. See, also, 63 C. J. 426.

In *Wright Restaurant Co. v. Seattle Restaurant Co.,* 67 Wash. 690, 122 Pac. 348, we held that unfair competition by the fraudulent use of a trade name need not rest on the exclusive right in the plaintiffs to the use of the name. A text writer was quoted as follows:

"In fact, the distinguishing feature of cases of unfair competition is the protection of one who has no technical trade-mark, and hence no exclusive property right." Paul on Trade Marks, § 211.

The instant case shows a stronger case of unfair competition on the part of appellant than was shown in *Electric Supply Co. v. Hess,* 139 Wash. 20, 245 Pac.

27; and *Queen Anne Candy Co. v. Woolworth Co.,* 165 Wash. 143, 4 P. (2d) 844. In the last cited case, our earlier Washington cases were reviewed. We there quoted with approval from *Mark Realty Corp. v. Major Amusement Co.,* 180 App. Div. 549, 168 N. Y. Supp. 244, as follows:

"The law relating to unfair competition has a three-fold object: First, to protect the honest trader in the business which fairly belongs to him; second, to punish the dishonest trader who is taking his competitor's business away by unfair means; and, third, to protect the public from deception."

See, also, *Diamond Drill Contracting Co. v. International Diamond Drill Contracting Co.,* 106 Wash. 72, 179 Pac. 120; *Saxlehner v. Eisner & Mendelson Co.,* 179 U. S. 19, 21 S. Ct. 7; 26 R. C. L. 828.

Appellant also makes some argument to the effect it might be considered that respondent had abandoned the use of the trade name, although it is frankly stated in the brief of appellant that the question of abandonment is controlled to some extent by the intention of the former holder thereof, and such intention must be deduced from the acts and conduct of the former holder, but his undisclosed intention will not be sufficient to preclude another from appropriating and acquiring a right therein.

In the *Saxlehner* case, *supra,* the United States supreme court held that, in order to establish the defense of abandonment, it is necessary to show not only acts indicating a practical abandonment, but an actual intent to abandon. In *Hannis Distilling Co. v. Torrey Co.,* 32 App. D. C. 530, it was held that abandonment was not to be inferred where there was a disuse for some years occasioned by a statutory restriction on the sale of liquor.

The trial court found that there had been no intent

to abandon by respondent. The finding is fortified and justified by the decisions from those courts.

The judgment of the trial court is right, and it should be, and is, affirmed.

BEALS, C. J., TOLMAN, BLAKE, and GERAGHTY, JJ., concur.