[No. 114-40697-1.  Division One.  April 20, 1970.]
Panel 1

EVERGREEN STATE AMUSEMENT COMPANY, *Respondent*, v. S. F. BURNS & CO., INC., *et al.*, *Appellants.*

*Nicolai, Montgomery & Sorrel* and *Max R. Nicolai*, for appellants.

*Monheimer, Schermer, Van Fredenberg & Smith* and *Stephen P. Ryder*, for respondent.

JAMES, C. J.—This is an appeal from a decree enjoining the defendants, S. F. Burns & Co., Inc., and others (hereinafter "Burns"), from using the word "Evergreen" as a part of the name of their motion picture theater.

The trial judge found these to be the facts: The plaintiff, Evergreen State Amusement Corporation, was the first appropriator of the name "Evergreen," which it uses in conjunction with the operation of its theaters. It has used the name continuously since 1933. In October of 1967 Burns began using the word "Evergreen" in connection with its drive-in theater in Bellevue, Washington. Burns knew that Evergreen State was the prior appropriator of the trade name "Evergreen." The name "Evergreen" or "Evergreen Point" has little geographical significance with reference to the location of Burns' theater. In the motion picture industry in the state of Washington, the name "Evergreen" has come to have a connotation referring to the theaters owned or operated by Evergreen State. Burns' use of the word "Evergreen" to identify its theater has caused members of the public and the motion picture industry to believe that

Burns' theater was an operation of, or affiliated with, Evergreen State. The confusion probably will continue.

Burns' first assignment of error is that finding of fact 6 is contrary to the evidence. The finding is,

That [Burns'] use of the name "Evergreen Point Drive-In" has little geographical significance.

Our reading of the record satisfies us that there is substantial evidence to support the trial judge's finding. Burns' theater is not situated on Evergreen Point or near the Evergreen Point Bridge. S. F. Burns testified that he was not familiar with the geography of the Evergreen Point vicinity when he selected the name "Evergreen Point" for the name of the theater. He was not aware of the distance from Evergreen Point to the theater location or with the intersecting roads. He later changed the name of the theater from "Evergreen Point Theater" to "Evergreen Drive-In Theater."

■ Where there is substantial evidence to support a trial judge's findings, they will not be disturbed on appeal. *Thorndike v. Hesperian Orchards, Inc.*, 54 Wn.2d 570, 343 P.2d 183 (1959).

Since finding 6 is supported by substantial evidence and Burns has assigned error to none of the remaining findings, the findings establish the facts for purposes of this appeal. *Grip v. Buffelen Woodworking Co.*, 73 Wn.2d 219, 437 P.2d 915 (1968).

Burns' other assignments of error are all to the effect that conclusion of law 5 is contrary to the evidence and the applicable law. Conclusion 5 is

That a permanent injunction should issue restraining [Burns] from using the word "Evergreen" in [its] business or any simulation, derivation or approximation thereof, either alone or in conjunction with any word or words in connection with [Burns'] business.

By this contention Burns in effect asserts that the trial judge did not correctly apply the law to the facts.

■■ The applicable rules of law are concisely stated in *Seattle St. Ry. & Mun. Emp. Relief Ass'n v. Amalgamated*

*Ass'n of St., Elec. Ry. & Motor Coach Emp. of Am.*, 3 Wn.2d 520, 531, 101 P.2d 338 (1940):

The question involved in the case before us is that of unfair competition in the use of a trade name. Upon that subject, we need go no further than to our own cases, as subsequently noted herein. From those cases the following rules may be deduced.

(1) The right to use a particular name as a trade name belongs to the one who first appropriates and uses it in connection with a particular business. This rule is basic and is supported by all the cases hereinafter cited.

(2) A person, whether individual or corporate, may not use any name, not even his or its own, which is the distinctive feature of a trade name already in use by another, if such use by the one person tends to confuse, in the public mind, the business of such person with that of the other. [Citations.]

(3) The prior user may be entitled to relief regardless of actual fraud or intent to deceive on the part of a subsequent appropriator. [Citations.]

(4) To acquire the right to use a particular name, it is not necessary that the name be used for any considerable length of time. It is enough to show that one was in the actual use of it before it was begun to be used by another. [Citations.]

(5) A trade name may be abandoned or given up by the original appropriator, and, when it is so abandoned or given up, any other person has the right to seize upon it immediately, and make use of it, and thus acquire a right to it superior not only to the right of the original user, but of all the world. [Citation.]

(6) A trade name, in order to be an infringement upon another, need not be exactly like it in form and sound. It is enough if the one so resembles another as to deceive or mislead persons of ordinary caution into the belief that they are dealing with the one concern when in fact they are dealing with the other. [Citations.]

(7) The rule is no different when the name, or some part thereof, is a geographical name, or contains descriptive words which have acquired a secondary meaning. [Citations.]

(8) Prior right to the use of a name will be protected by injunction against others using it unfairly. [Citations.]

We apply these rules to the facts of this case:

1. Evergreen State first appropriated the name "Evergreen" and continues to use it in connection with its motion picture theater business.

2. Burns' use of the name "Evergreen" has tended to confuse in the public mind the business of Burns with the business of Evergreen State.

3. The fact that Burns' use of the name "Evergreen" may not have been with fraudulent intent does not affect Evergreen State's right to relief.

4. Evergreen State was using the name when Burns began to use it.

5. Evergreen State has never abandoned the use of the name.

6. The manner in which Burns used the name so resembled Evergreen State's use that persons of ordinary caution were led to believe that Burns' theater was one of those operated by Evergreen State.

7. The name "Evergreen" or "Evergreen Point" has little geographical significance in relation to Burns' use. The name "Evergreen" has acquired a secondary meaning identified with the theater business of Evergreen State.

Burns argues that Evergreen State proved no monetary loss or damage and that, at most, the evidence establishes that the confusion caused by the name similarity resulted in only minor inconvenience to Evergreen State.

■ Proof of monetary damage is not necessarily a prerequisite to relief in an unfair competition action. For example, the court in *National Shoe Stores Co. v. National Shoes of New York, Inc.*, 213 Md. 328, 338, 131 A.2d 909 (1957) said,

> In the instant case there was certainly no proof of damages. Cf. *Rossi v. Mewshaw*, 195 Md. 323. There was no proof that any customer was deceived into thinking he was dealing with the appellant when dealing with the appellees. But this would not necessarily be controlling. "The determining factor is not that people have actually been deceived, but that there is a likelihood of that happening." *Ajax Tool Co. v. Buchalter Tool Co.*, 211 N. Y. S. 241, 243; *Nims*, op., cit., § 335, p. 1049.

The reasons why such proof is unnecessary are also given in Restatement of Torts § 744 comment *a* (1938):

> In some other branches of the law of torts, the usual remedy against a wrongdoer is an action for damages in which a money judgment is sought. But against one who is liable to another for the use of the unfair trade practices stated in this Chapter, the usual remedy is an action for equitable relief, and an injunction is the usual relief granted. Such an unfair trade practice is ordinarily not a single event but a continuous course of business conduct and the person harmed by this conduct is subjected to continuing, and often increasing, harm. He is generally more concerned, therefore, to prevent further harm than to secure compensation for past harm. Frequently the harm may not be reparable by an action for damages because of the difficulty of computing the amount of the loss or of establishing the causal connection between the loss and the wrongful conduct. In any event, since both the conduct and the harm are continuing, reparation may involve a multiplicity of actions. From the point of view of either the plaintiff or the defendant, preventive relief is, therefore, usually appropriate. In proper cases, however, damages and profits may also be recovered  . . .

Burns also argues that the name "Evergreen" is so commonly used in the state of Washington,[1] the Evergreen State, that it should be considered a part of the "mythology" of the state, as Burns puts it, and therefore not available for appropriation as an exclusive trade name. But even the right to the exclusive use of the name of the capitol city of this state, Olympia, as the name of a popular beverage has been judicially approved. *Olympia Brewing Co. v. Northwest Brewing Co.*, 178 Wash. 533, 35 P.2d 104 (1934).

Burns further argues that allowing Evergreen State to monopolize a name as common as "Evergreen" would foster a monopoly in violation of Const. art. 12 § 22.[2]

---

[1] In his oral opinion, the trial judge observed that there was evidence that some 70 or more companies used the name in the state of Washington. However, only the parties to this suit use the name in connection with a theater.

[2] "MONOPOLIES AND TRUSTS. Monopolies and trusts shall never be allowed in this state, and no incorporated company, copartnership, or

■ The type of monopoly prohibited by the state constitution is clearly of a different kind than the monopoly involved in the use of a trade name. Relating the established facts of this case to the constitutional provisions, it is evident that the exclusive right to use the name "Evergreen" does not "in any manner whatever" enable Evergreen State Amusement Company to "combine" with another company to "fix prices" or "limit" the showing of motion picture films. The reason the protection of a trade name is not inconsistent with the policy of the law to encourage fair competition by prohibiting monopolies is stated in *Queen Anne Candy Co. v. F. W. Woolworth Co.,* 165 Wash. 143, 149, 4 P.2d 844 (1931):

> While it is contrary to the spirit of our laws to interfere with fair competition, yet there are certain recognized property rights which are, of necessity, monopolistic in their character, such as those accorded by patent and copyright, and those somewhat akin thereto, as the right of those engaged in trade and commerce under a trade name to be protected from unfair competition in the use thereof. The principle "that nobody has the right to represent his goods as the goods of somebody else," is firmly imbedded in the law. A person may not choose a trade name previously adopted by another in the same kind of business, if the one who first selected the name is injured, or if the general public is deceived, thereby. We have frequently applied this rule in cases involving unfair business competition.

■ The essential requirement for the protection of a trade name is that the name have acquired a secondary meaning in connection with the business of the first user. Whether or not a name has acquired a secondary meaning

---

association of persons in this state shall directly or indirectly combine or make any contract with any other incorporated company, foreign or domestic, through their stockholders, or the trustees or assignees of such stockholders, or with any copartnership or association of persons, or in any manner whatever for the purpose of fixing the price or limiting the production or regulating the transportation of any product or commodity. The legislature shall pass laws for the enforcement of this section by adequate penalties, and in case of incorporated companies, if necessary for that purpose, may declare a forfeiture of their franchises."

is a question of fact to be determined on a case-to-case basis.

No inflexible rule can be laid down as to what conduct will constitute unfair competition. Each case is, in a measure, a law unto itself. Unfair competition is a question of fact. The question to be determined in every case is whether or not, as a matter of fact, the name or mark used by defendant has previously come to indicate and designate plaintiff's goods, or, to state it another way, whether defendant, as a matter of fact, is by his conduct passing off his goods as plaintiff's goods, or his business as plaintiff's business. The universal test question is whether the public is likely to be deceived.

*Olympia Brewing Co. v. Northwest Brewing Co., supra* at 538.

In this case the trial judge's unchallenged finding of fact is that the name "Evergreen" has come to be identified with theaters operated by Evergreen State and that Burns' use of the name has tended to confuse the public. The established facts support the trial judge's decree. The judgment is affirmed.

FARRIS and SWANSON, JJ., concur.

Petition for rehearing denied May 26, 1970.