[No. 11548–1–I.   Division One.   May 21, 1984.]

MONEY SAVERS PHARMACY, INC., *Appellant,* v. KOFFLER STORES (WESTERN) LTD., *Respondent.*

*Karr, Tuttle, Koch, Campbell, Mawer & Morrow, P.S., Floyd L. Newland,* and *Christopher W. Moore,* for appellant.

*Helsell, Fetterman, Martin, Todd & Hokanson, Arden J. Olson, John E. Ederer, Linda J. Cochran,* and *Ragan L. Powers,* for respondent.

ANDERSEN, J.—

## FACTS OF CASE

This is an action for unfair competition based on a claim of trade name infringement. A summary judgment dismissing the action was entered in the Superior Court. We reverse and remand.

The plaintiff, Money Savers Pharmacy, Inc., brought this action against the defendant, Koffler Stores (Western) Ltd. Plaintiff alleged that the defendant wrongfully used a name similar to its trade name and that such conduct caused

confusion to the public between the identity of its business and the defendant's business. Plaintiff sought injunctive relief and damages as well as attorneys' fees and costs.

The Superior Court granted a summary judgment to the defendant holding that: (a) the plaintiff had no actionable claim under the Consumer Protection Act, RCW 19.86; and (b) there was no genuine issue as to any material fact relating to the plaintiff's common law unfair competition claim and the defendant was entitled to a judgment thereon as a matter of law. CR 56.

The basic evidentiary facts are undisputed. In September of 1976 the plaintiff began doing business at its Edmonds location under the name "Money Savers Pharmacy and Gift Shop".[1] In advertising this store, the names "Money Saver Pharmacy", "Money Savers Pharmacy", "Money Saver's Pharmacy", "Money Savers RX", and "Money Saver RX" are used interchangeably.[2] The plaintiff's advertisements appear approximately monthly in an insert circular in the Edmonds Enterprise newspaper, as well as in telephone directories, on coupons, fliers and handbills, as well as in radio advertising.

In late 1979, the defendant opened its first Washington outlet in the Alderwood Mall in Lynnwood, under the name "Shoppers Drug Mart". By mid–1981 the defendant operated five outlets in southern Snohomish County and northern King County.[3]

---

[1]In addition to the store the plaintiff has in Edmonds, it also operates one in Ellensburg, and has, in the past, operated similar businesses in Snohomish, Shelton and Seattle. Only the Edmonds store is involved in this action.

[2]The plaintiff had a registered trademark in Washington for use with cosmetic and toilet preparations which expired in 1977. The mark consisted of the words "The Money Saver" with a picture of currency and coins between the words "Money" and "Saver". The plaintiff acquired the use of this trademark when it purchased its three businesses in Snohomish, Shelton and Ellensburg in 1972.

[3]In the plaintiff's motion for reconsideration filed in the Superior Court, it asserted that at that time the defendant had plans to open another Shoppers Drug Mart approximately a mile from the plaintiff's Edmonds location. During oral argument before this court, counsel for the defendant stated that there was

As a part of the defendant's regular advertising campaign, it publishes an advertising circular entitled "The Shoppers Drug Mart Money Saver" in the Edmonds area on about a monthly basis. On each page of the circular, it identifies the defendant's business as "The Shoppers Drug Mart". Since at least 1981, the circular has contained a map locating each of the defendant's five stores in the area. In its radio advertisements, the defendant also uses the words "Moneysaver Event" to promote certain of its store's sales. No intent on the part of the defendant to take away the plaintiff's customers or to confuse the public is claimed.

Plaintiff's two owners and one of its employees recounted by affidavit numerous customer uncertainties resulting from these various advertisements. Attached to the affidavits are copies of notes chronicling these customer reactions which were made by the plaintiff's employees and owners during a given period, June 1981 to February 1982. Several customers came to the plaintiff's store expecting to find certain products as advertised in the defendant's circular. One such customer wondered why the defendant's advertisement had not listed the address of the plaintiff's store along with the maps of the locations of the other five stores. Some of them thought that the defendant's stores and the plaintiff's store were branches of the same business.

After considering these and other affidavits, the trial court concluded: (a) that the requisite public interest to support the Consumer Protection Act claim was lacking and (b) that there was no genuine dispute as to any likelihood of confusion between the businesses. Summary judgment was granted to the defendant in all respects and the plaintiff's action was dismissed.

Following a denial of the plaintiff's motion for reconsideration, this appeal was taken. The appeal presents two issues.

---

not a Shoppers Drug Mart in Edmonds nor were there any plans to open one.

## ISSUES

ISSUE ONE. Did the trial court err by concluding that summary judgment was proper on the issue of the tendency of the public to be confused by the defendant's use of the words "Money Saver"?

ISSUE TWO. Did the trial court err by concluding that there was no Consumer Protection Act claim and that summary judgment on that issue was therefore appropriate?

## DECISION

ISSUE ONE.

CONCLUSION. In opposition to the defendant's motion for summary judgment, the plaintiff set forth a number of specific instances of customer reaction of such nature as to raise a sufficient inference that the defendant's use of the words "Shoppers Drug Mart Money Saver" tends to confuse, mislead or deceive the public as to the identity of the two businesses. Summary judgment, therefore, should not have been granted on the plaintiff's common law claim of unfair competition based on the use of a trade name. CR 56.

Guidelines for our consideration of this issue are as follows:

In the case of *Seattle, etc. Ass'n v. Amalgamated Ass'n, etc.,* 3 Wn. (2d) 520, 101 P. (2d) 338 (1940), we reviewed extensively our previous decisions involving the right to use a trade name and adopted therein eight rules of law for guidance in trade name cases. These rules were later cited in *Foss v. Culbertson,* 17 Wn. (2d) 610, 136 P. (2d) 711 (1943). We deem it advisable for the purpose of this appeal to again state these rules, which are as follows:

"First: The right to use a particular name as a trade name belongs to the one who first appropriates and uses it in connection with a particular business."

"Second: A person, whether individual or corporate, may not use any name, not even his or its own, which is the distinctive feature of a trade name already in use by another, if such use by the one person tends to confuse, in the public mind, the business of such person with that of the other."

"Third: The prior user may be entitled to relief regardless of actual fraud or intent to deceive on the part of a subsequent appropriator."

"Fourth: To acquire the right to use a particular name, it is not necessary that the name be used for any considerable length of time. It is enough to show that one was in the actual use of it before it was begun to be used by another."

"Fifth: A trade name may be abandoned or given up by the original appropriator, and, when it is so abandoned or given up, any other person has the right to seize upon it immediately, and make use of it, and thus acquire a right to it superior not only to the right of the original user, but of all the world."

"Sixth: A trade name, in order to be an infringement upon another, need not be exactly like it in form and sound. It is enough if the one so resembles another as to deceive or mislead persons of ordinary caution into the belief that they are dealing with the one concern when in fact they are dealing with the other."

"Seventh: The rule is no different when the name, or some part thereof, is a geographical name, or contains descriptive words which have acquired a secondary meaning."

"Eighth: Prior right to the use of a name will be protected by injunction against others using it unfairly."

*Holmes v. Border Brokerage Co.,* 51 Wn.2d 746, 750–51, 321 P.2d 898 (1958).

■■ Pursuant to these rules "[t]he plaintiff in a trade name infringement action must establish that defendant has infringed on the distinctive feature of his name in a manner that 'tends to confuse, in the public mind' the two businesses." *Puget Sound Rendering, Inc. v. Puget Sound By–Products,* 26 Wn. App. 724, 728, 615 P.2d 504 (1980). "The underlying concept is that of unfair competition in matters in which the public generally may be deceived or misled", *Seattle St. Ry. & Mun. Employees Relief Ass'n v. Amalgamated Ass'n of St., Elec. Ry. & Motor Coach Employees,* 3 Wn.2d 520, 534, 101 P.2d 338 (1940), with the universal test question being "whether the public is likely to be deceived", *Olympia Brewing Co. v. Northwest Brew-*

*ing Co.,* 178 Wash. 533, 538, 35 P.2d 104 (1934).

Although proof of actual confusion is not required to sustain a claim for trade name infringement, *see Holmes,* at 750–51, evidence of actual confusion indicating public confusion by the name similarity may be relied on to establish that injunctive relief is warranted. *See Puget Sound Rendering,* at 728–29; *Seattle Employees,* 3 Wn.2d at 528; *Foss v. Culbertson,* 17 Wn.2d 610, 616, 136 P.2d 711 (1943).

Whether or not there has been unfair competition is a question of fact. *Olympia Brewing Co.,* at 538; *Foss,* at 623. *Accord, Evergreen State Amusement Co. v. S.F. Burns & Co.,* 2 Wn. App. 416, 422–23, 468 P.2d 460 (1970). *See also Seattle Employees,* 3 Wn.2d at 523. Even where the evidentiary facts are undisputed, if reasonable minds could draw different conclusions from those facts, then summary judgment is not proper. *Fleming v. Stoddard Wendle Motor Co.,* 70 Wn.2d 465, 467, 423 P.2d 926 (1967).

Therefore, in reviewing the Superior Court's order of summary judgment in this case,

> we must engage in the same inquiry as the trial court. A summary judgment motion under CR 56(c) can be granted only if the pleadings, affidavits, depositions, and admissions on file demonstrate there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. The court must consider all facts submitted and all reasonable inferences from the facts in the light most favorable to the nonmoving party.

(Citations omitted.) *Wilson v. Steinbach,* 98 Wn.2d 434, 437, 656 P.2d 1030 (1982). In order to preclude summary judgment the nonmoving party

> must set forth specific facts that sufficiently rebut the moving party's contentions and disclose that a genuine issue as to a material fact exists.

*Peterick v. State,* 22 Wn. App. 163, 181, 589 P.2d 250 (1977).

Here it is undisputed that since 1976 the plaintiff has been using the name "Money Savers Pharmacy" and variations thereof as the name of its Edmonds business. The

defendant, which in 1979 began using the words "Money Saver" in the same general geographical area, does not use the challenged words in the name of its business, but uses them with qualifying words to refer to its advertising circular, the "Shoppers Drug Mart Money Saver", and in its radio advertisements as "Shoppers Drug Mart Moneysaver Event". The defendant also states the location of its stores in its circular and radio advertisements, and since about 1981 has included maps in its circulars showing the locations of its stores.

In opposition to the defendant's motion for summary judgment, however, the plaintiff set forth a number of specific instances where identified members of the public: (1) had shopped at the plaintiff's store expecting to rely on the defendant's advertising circular; (2) came to the plaintiff's store expecting to be able to exchange goods which had been purchased at one of the defendant's stores; and (3) thought the plaintiff's store and the defendant's stores were part of the same business. Also, in at least one instance, one of the plaintiff's own employees thought that one of the defendant's advertisements was one of the plaintiff's advertisements. Further, it is not disputed that the parties distribute their advertising circulars on a monthly basis, use at least one of the same newspapers and advertise the same general type of goods.

This evidence is sufficient to raise a genuine issue of material fact as to whether the defendant's use of the words "Money Saver" tends to confuse the two businesses in the public mind, *Holmes,* at 750 (rule 2), and as to whether it so resembles the plaintiff's use as to deceive or mislead persons of ordinary caution into the belief that they are dealing with one of the parties when in fact they are dealing with the other, *Holmes,* at 751 (rule 6).[4]

---

[4]The defendant vigorously urges that under the factors laid down in *Tradewell Stores, Inc. v. T.B. & M., Inc.,* 7 Wn. App. 424, 428–30, 500 P.2d 1290 (1972), summary judgment was proper. However, the trial court considers those factors in order "to frame an injunction in a trade name infringement action", *Puget Sound Rendering,* at 729, and "to support the scope of the injunctive relief allowed . . .",

ISSUE TWO.

CONCLUSION. The plaintiff sets forth no specific facts to establish that any other of the defendant's competitors or any of its customers or other members of the public were likely to be harmed by the defendant's advertising practices, or that the defendant was motivated other than by legitimate business concerns. The entry of a summary judgment for the defendant on the plaintiff's Consumer Protection Act claim was, therefore, proper.

"[T]his state's Consumer Protection Act created a cause of action not previously known to the common law." *Aungst v. Roberts Constr. Co.,* 95 Wn.2d 439, 442, 625 P.2d 167 (1981). RCW 19.86.020[5] embodies new concepts having no common law equivalent, namely the concepts of "unfair methods of competition" and "unfair or deceptive acts or practices". *Johnston v. Beneficial Management Corp. of Am.,* 85 Wn.2d 637, 640, 538 P.2d 510 (1975), *modified on other grounds in Salois v. Mutual of Omaha Ins. Co.,* 90 Wn.2d 355, 360–61, 581 P.2d 1349 (1978).

While "[t]he common–law action of unfair competition generally involved only one plaintiff, . . . the statutory offense of 'unfair methods of competition' is likely to harm all competitors if it harms any." *Seaboard Sur. Co. v. Ralph Williams' Northwest Chrysler Plymouth, Inc.,* 81 Wn.2d 740, 745, 504 P.2d 1139 (1973). Since the purpose of the Consumer Protection Act is to protect the public inter-

---

*Tradewell,* at 428, only after it first determines if injunctive relief is warranted.

Applying such factors the trial court may require the defendant to include additional qualifying language in its name when to do so would eliminate the confusion caused by the similarity of the trade names. *Tradewell,* at 426; *Wine v. Theodoratus,* 19 Wn. App. 700, 708, 577 P.2d 612 (1978); *Puget Sound Rendering,* at 730. *See Pioneer First Fed. Sav. & Loan Ass'n v. Pioneer Nat'l Bank,* 98 Wn.2d 853, 862 n.3, 659 P.2d 481 (1983). In the case at bench, however, the trier of fact must first determine whether or not, despite the additional words already used by the defendant with the words "Money Saver", the "public is likely to be deceived." *Olympia Brewing,* at 538.

[5]"Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." RCW 19.86.020.

est, *Lightfoot v. MacDonald,* 86 Wn.2d 331, 334, 544 P.2d 88 (1976), a necessary element of an unfair competition claim brought under RCW 19.86 is that the defendant's conduct is "injurious to the public interest", *Brown v. Safeway Stores, Inc.,* 94 Wn.2d 359, 373–74, 617 P.2d 704 (1980).

The State Supreme Court recently, for the first time, considered what kind of conduct could constitute an "unfair method of competition" within the meaning of RCW 19.86.020. *State v. Black,* 100 Wn.2d 793, 676 P.2d 963 (1984). It held that

> In passing the Consumer Protection Act, the Legislature specifically recognized that acts or practices which are reasonable business practices or which are not injurious to the public are not the kind of acts sought to be prohibited. RCW 19.86.920. . . . By expressly allowing for reasonable business practices, our Legislature recognized that a court must weigh the public interest in prohibiting anticompetitive conduct against the recognition that businesses need some latitude within which to conduct their trade. In acknowledging that the letters written by respondent brokers were motivated by legitimate business concerns, the trial court implicitly acknowledged that the respondents' actions were not the kind of conduct within the scope of RCW 19.86.020.

*Black,* at 802–03.[6]

In addition, in another recent case the State Supreme Court reiterated that:

> For a private individual to initiate an action under the Consumer Protection Act, "the conduct complained of must: (1) be unfair or deceptive; (2) be within the sphere of trade or commerce; and (3) impact the public interest." *Anhold v. Daniels,* 94 Wn.2d 40, 45, 614 P.2d 184 (1980).

*McRae v. Bolstad,* 101 Wn.2d 161, 165, 676 P.2d 496 (1984). In that action claiming an unfair or deceptive act or prac-

---

[6]RCW 19.86.920 reads in part: "It is, however, the intent of the legislature that this act shall not be construed to prohibit acts or practices which are reasonable in relation to the development and preservation of business or which are not injurious to the public interest."

tice, the court noted that in addition to establishing a per se violation of the Consumer Protection Act,

> [a] plaintiff may also establish the public interest element through satisfaction of the test established by this court in *Anhold v. Daniels, supra* at 46:
>> [T]he presence of public interest is demonstrated when the proof establishes that (1) the defendant by unfair or deceptive acts or practices in the conduct of trade or commerce has induced the plaintiff to act or refrain from acting; (2) the plaintiff suffers damage brought about by such action or failure to act; and (3) the defendant's deceptive acts or practices have the potential for repetition.

*McRae,* at 165.

The plaintiff urges that the defendant's conduct should be characterized under the Consumer Protection Act as an unfair method of competition rather than as an unfair or deceptive act or practice. In opposing the defendant's motion for summary judgment in this case, however, the plaintiff presented no evidence that any other competitor has been or would be harmed by the defendant's advertising, or that the defendant's advertising was motivated by other than legitimate business concerns. To the contrary, the plaintiff conceded that the defendant had no intention to confuse the public as to the identity of the two businesses or to take customers away from the plaintiff.

Moreover, it is undisputed that the defendant had used the words "Shoppers Drug Mart Money Saver" and "Moneysaver Event" since 1972 in connection with its advertising for its stores in Canada and in other states in the United States. Nor has the plaintiff set forth any specific facts disclosing that any of its customers or any other members of the public were damaged by the defendant's advertising practices or that they were likely to be.

We conclude, as did the trial court, that the plaintiff did not sufficiently rebut the defendant's contention that summary judgment was proper on plaintiff's Consumer Protection Act claim because its advertising practices were not injurious to the public interest.

Reversed in part and remanded.

SWANSON and RINGOLD, JJ., concur.

Reconsideration denied August 31, 1984.

Review by Supreme Court pending January 25, 1985.